## HEIRS OF BISHOP v. HAMPTON.

1. A report by an administrator of an estate, to the orphans' court, *that the estate was solvent, and that it would be of infinite benefit to the heirs of said estate, to sell, without delay, the real property of said estate,* does not confer jurisdiction on the court, to order a sale of the real estate, and a sale made pursuant to such order, does not divest the title of the heir.

2. The petition of an administrator for the sale of land, being lost, or mis laid, the testimony of the judge of the court cannot be received, that the petition was in fact different from the recital of it in the orders of the court, setting forth the grounds set forth in the petition, for the sale of the land.

Error to the Circuit Court of Benton. Before the Hon. S. C. Posey.

THIS was an action of trespass to try titles, brought by the plaintiffs in error, against the defendant, in the circuit court of St. Clair, and was removed by change of venue, to Benton. The plaintiffs, to show title in themselves, proved, that their father died seized of the premises. The defendant read to the jury, a transcript of entries, and proceedings, in the orphans' court of St. Clair. The first is the appointment of Joel Chandler, administrator of the estate of Hiram G. Bishop, who was the father of plaintiff: this order bears date 29th September, 1835; and at the same time, an order was made, that the administrator sell all the personal property of the.

deceased. The next order is in the following language: "Orphans' court, 11th March, 1836. This day came Joel Chandler, administrator of Hiram Bishop, deceased, and makes report to the court, that said estate is perfectly solvent, and that it would be of infinite benefit to the heirs of said estate, to sell, without delay, the real estate belonging to said estate. It is therefore ordered, that his petition be received, and an order of sale be made." Then follows an order, that publication be made in the Huntsville Democrat, requiring all the legatees, and other persons interested in said real estate, on the first Monday in May then next, to appear, and show cause, why the sale of said land should not be ordered.

The next order bears date the 2d July, 1836, and recites, that Joel Chandler, administrator, had filed his petition in the orphans' court, on the 11th March, 1836, for the sale of the real estate of Hiram G. Bishop, and forty days' notice having been given in the Huntsville Democrat, and no cause being shown why said real estate should not be sold, "it is therefore ordered, that said tract of land, described in the administrator's petition, shall be sold on the first Monday in September next, and that Samuel Souls, Jeremiah Gregory, and James Anderson, be appointed commissioners to superintend the sale of the same, in all things, pursuant to the requisites of the statute. No further proceedings appear of record, until the first Monday in September, 1847, when the following order was made: It appears to this court, that heretofore, on the 24th July, 1836, on the petition of the administrator of Hiram Bishop, deceased, filed for that purpose, this court ordered and decreed the sale of the land of Hiram Bishop, and appointed James Anderson, Samuel Souls, and Jeremiah Gregory, commissioners to make such sale; and the report of Jeremiah Gregory, and Samuel Souls, two of the commissioners, coming in, showing the sale of said real estate, according to said order, and decree, and no final decree having been rendered in the case, said report is here referred to, and made part of this entry; and it appearing to the court, that Joel Chandler, sr., was the purchaser of said real estate, and that the terms of said sale have been complied with, by the said purchaser; and it appearing that James Anderson, the

other commissioner, has removed to parts unknown, and that the purchaser has departed this life: upon the motion of a party interested, it is ordered, and decreed, that said report be confirmed, and that the said two commissioners, who made said sale, as above, convey said real estate, sold as aforesaid, as set forth in the report, to said purchaser; and that such conveyance take effect, and be operative, just as if this final decree had been made, and the conveyance executed in the life-time of the purchaser.

The report of the two commissioners, bears date the 6th September, 1847, and states, that in pursuance of the order, they sold the real estate, (describing it,) on the first Monday in September, 1846, after having advertised it for sale for forty days in the Huntsville Democrat, at public auction, to Joel Chandler, for $1710, he being the highest and best bidder, which report is signed by the two commissioners. The defendant also read a deed from the three commissioners, bearing date in July, 1837, to Joel Chandler, for the land in controversy, which expresses the consideration of $1710, and acknowledges the receipt of it by the commissioners: also another deed, executed on the 6th of September, 1847, by the two commissioners, to said Chandler, for the same land, and on the same consideration. The defendant then read a deed from Joel Chandler, to himself, bearing date the 26th December, 1838.

The defendant introduced as evidence, the deposition of James Rogan, who testified, that he had been judge of the county court of St. Clair county, from 1833, until 1845; that Joel Chandler, the administrator of Hiram Bishop, during the time he was judge, filed his petition to the said court, praying for an order for the sale of the lands; that he cannot recollect, *verbatim*, the petition, but thinks that the petition set forth, that the estate was solvent, but that the lands cannot be fairly, and equally divided amongst the heirs, without a sale, and that the heirs were all minors. That he cannot tell where said petition now is; that it was in the clerk's office. On cross-examination, he stated, that all the orders, made during the time he acted as judge, were, to the best of his recollection, entered of record, according to the facts, to the best of his knowledge. To the reading of this deposition,

the plaintiff objected, but the objection was overruled. The defendant also proved, that the said petition could not be found, after a thorough examination of the clerk's office.

The plaintiff requested the court, to exclude from the jury, the order of sale of said lands, and all the orders in reference thereto, but the court refused: also, the report of the commissioners, which the court refused.

The court charged the jury, that if they believed the evidence, they should find for the defendant; to which the plaintiff excepted.

The several rulings, and charge of the court, are now assigned as error.

J. B. MARTIN, for plaintiffs in error.

1. The orphans' court is one of special, and limited jurisdiction. The statute authorizing its action, must be strictly pursued; and that this has been done, must be shown by the record of its proceedings, else they are not irregular, and voidable merely, but are absolutely void. Taliaferro, adm'r, v. Thompson, 3 Ala. 670; ib. 623; Wiley et al. v. White and Leslie, 3 Stew. 331; 8 Por. 375; Lakin v. Hudson, 6 Cowen, 224; 15 Johns. 141; 6 Wheat. 119; 7 Wend. 148; Bloom v. Burdick, 1 Hill, 139; 4 Wheat. 77; 12 Ohio, 271; Blann, guardian, v. Grant, adm'r, 6 Ala. 110; 11 Mass. 507; 7 Wendell, 148.

2. We are to look to the orders of the judge, they being a portion of the record, to ascertain the facts presented to the court, and upon which the court acted, and not to the uncertain recollection of a witness, as to matters which occurred ten years prior to the date of his testimony.

3. The authority, and power, of the commissioners, was exhausted by a sale of the land, and hence their deed to Chandler, of the 14th July, 1837, (no report having been made to the court, nor decree of affirmance, and order to convey by the same,) did not convey to the purchaser a title, and consequently, left in the heirs. Cooper v. McCullough's adm'r, 5 Ala. 324, particular p. 337; 1 Ala. 475; 1 Hill, 142; 13 Wendell, 165; 20 ib. 241; 7 Cowen, 88.

4. The second deed cannot defeat the right of the plaintiffs to recover in this suit, made, as it is, to a dead man, and

long after the commencement of this suit.   2 Greenl. Ev. 251; Hamleton v. Taylor, Littell's Sel. Ca. 244; Adams on Ej. 32; 9 Porter, 349.

5. The final decree, made by the judge of the orphans' court, 7th September, 1847, founded upon the report of two, of the three commissioners, appointed ten years anterior to their report, with none of the parties adverse in interest before the court, and using no means to give them notice, and that, too, after the commencement of this suit, will not be recognized as changing the rights of parties.   Authorities before cited as to notice, and McCurry v. Hooper, 12 Ala. R. 823.   Neither is it good as a judgment *nunc pro tunc.* · 1 Bac. Ab. 251, F; Wilkerson v. Goldthwaite, 1 Stew. & Por. 167; 2 Ala. 29; 9 Porter, 252; 2 Stew. 470; 3 Ala. 281; 10 ib. 375; 3 Smedes & Marsh. 234.   Judgments which are allowed to be amended, must be in a reasonable time.   3 Ham. 486; 1 ib. 375, (Ohio); 9 Johnson, 556; 2 Bay. Rep. 388.

RICE & MORGAN, contra.

1. The motion to suppress the deposition of Rogan, was predicated on facts, that the plaintiffs might have availed themselves of, on cross-examination, but which they failed to do.   The answers were full, and the witness examined in chief in reference to the exhibits attached to his answer, and without any objection taken previous to the trial.

2. Parol proof of a lost record, is admissible.   Ravenscroft v. Gibony, 2 Miss. 1; 3 Phil. Ev. 1066; 1 Greenl. Ev. § 509; Ansley v. Carlos, 9 Ala. R. 973; Duval v. McLoskey, 1 Ala. 711; McCartney v. Calhoun, 11 Ala. 118; Duval v. Bank, 10 Ala. R. 636.

3. The jurisdiction of the orphans' court is complete; all the requirements of the law were fulfilled, and the sale was the act of the court.   Duval′ v. McLoskey, 1 Ala. R. 711; McCartney v. Calhoun, *supra;* Jennings v. Jenkins, 9 Ala. 285; Lightfoot v. Lewis, 1 Ala. 475.   And the proceeding being *in rem,* the final decree is conclusive against all persons, especially when brought in question collaterally.   U. S. v. Aredondo et al. 6 Peters, 709-729; Bank v. Hodges, 12 Ala. R. 121; Tryon v. Tryon, 16 Verm. R. 313; Duval v.

Bank, 10 Ala. R. 636. McCurry v. Hooper, 12 Ala. R., does not apply here, as, in that case, the court had no jurisdiction, either *in rem. or personam.*

DARGAN, J.—As the plaintiffs showed, that their ancestor died seized of the lands sought to be recovered it became necessary for the defendant to show, that they had been divested of their title. For this purpose, he introduced a transcript of proceedings, had in the orphans' court of St. Clair, from which it appears that Joel Chandler, in the year 1835, was appointed administrator of the estate of Harris G. Bishop deceased, who was the father of the plaintiffs, and from whom they derived title. It also appeared, that on the 11th of March 1836, the following order was made : " This day came into court, Joel Chandler, administrator of Harris Bishop, deceased, and makes report, that the estate is entirely solvent, and that it would be of infinite benefit to the heirs of said estate, to sell without delay, the real estate belonging to said estate. It is, therefore, ordered that said petition be received, and the order of sale made." At the same time, publication was ordered to be made, in a newspaper, published in Huntsville, requiring the legatees, and all persons interested, to appear before the court, on the first Monday in May next, and show cause why said order should not be granted. On the 24th of July 1836, another order appears, which recites, that the publication had been made, and no cause being shown why the land should not be sold,—it is therefore ordered, that the lands described in the administrator's petition, be sold, on the first Monday in September next. The order then appoints three persons to superintend the sale, and to conduct it according to law. Nothing more appears, on the record, until July, 1847. Two of the commissioners then report, that they had sold the land on the day appointed, and that Joel Chandler became the purchaser, for the sum of seventeen hundred and ten dollars. They make also, as a part of their report, a deed executed by them of that date, to Joel Chandler, which expresses the receipt of the purchase money, by them. This report was confirmed by the orphans' court, and the two commissioners then executed another deed to Joel Chandler, for the same land, having the same date as their report. It was

shown, however, that Chandler had died before the report was made, and before the execution of the deed.

The jurisdiction of the orphans' court, over the lands of a decedent, is derived solely from our statute, and the mode of exercising that jurisdiction, is prescribed by statute. The question, whether the title of the heir has been defeated by a sale, under decree of the orphans' court, always depends on the fact, whether the court decreeing the sale, had jurisdiction of the subject matter. If it had, the title of the purchaser is not affected by mere irregularities in the proceedings : if it had not, the judgment, or decree, which is the source of the title of the purchaser, is a mere nullity, and no title can be derived from it. But in determining whether the court had jurisdiction, or not, we can look alone to the record : the facts that give the court jurisdiction, must appear on the record, or the judgment or decree pronounced, is without authority, and void. Wyman v. Campbell, 6 Porter, 219; Couch and Robinson v. Campbell, ib. 262 ; Duval's Heirs v. McLoskey,. 1 Ala. 710; McCartney v. Calhoun, 11 Ala. 110 ; Thompson v. Tolmie, 2 Peters' 157. Applying this rule of law, to the record of the orphans' court of St. Clair, as exhibited to us, by the transcript of its orders, and we are compelled to say, that the court had no warrant, or authority from any fact contained, or recited in the record, to decree a sale of the land.

The act under which these proceedings appear to have been had, is in the following language : " It shall be lawful for an administrator of any deceased intestate, or an executor of any deceased testator, who has not by will, authority to sell real estate, for the purpose of paying the debts, or to make a more equal distribution amongst the heirs, devisees, or legatees, to file a petition in the orphans' court of the county, in which letters of administration, or testamentary, have been granted, setting forth, that the personal estate is insufficient to pay the debts, or that the real estate cannot be equally, fairly, and beneficially divided between the heirs, legatees, or devisees, without a sale thereof," &c.

If the jurisdiction of the orphans' court, cannot be sustained under this act, there is no other, that we can look to, which would authorize the court, in decreeing the sale of the land.

We find, however, that under this act, the court can only proceed to order a sale : first, when the executor, or administrator, files his petition, setting forth that the personal estate is insufficient to pay the debts; or secondly, when an equal, fair, and beneficial division amongst the heirs, or devisees, cannot be made without a sale. The one, or the other of these two facts must exist ; that is, the personal estate must be insufficient to pay the debts, or it must be shown, that the division could not be equally, fully and beneficially made, without a sale, before the court can claim authority under this statute, to order the land to be sold.

The record produced, neither shows that a sale was necessary to pay the debt, nor to make a distribution. It recites that the administrator makes report, that the estate was solvent, and that it would be of infinite benefit to the heirs, to sell the real estate. No fact, or circumstance, recited in this order, gives the court jurisdiction to order the sale. The jurisdiction of the orphans' court, over the lands of the decedent, is not a general, but a special, or limited jurisdiction, and can only be legally exercised, whon those circumstances are shown to exist, which give the court power to act. And although, in the opinion of the administrator, it may be beneficial to the heirs, to sell the real estate, yet this gives the court no authority to order a sale, even if the judge fully concurred with him in opinion.

It is however, contended, that the testimony of the county judge should be received, to supply the defect of jurisdiction, apparent on the face of the record ; he testified, that the administrator filed a *written petition*, in court, praying a sale, in which it was averred, that the lands could not be equally, fairly and beneficially divided, without a sale. This petition is lost, and cannot be found after the most diligent search.

We feel no hesitation in saying, that this testimony of the county judge, should not have been received to show, that the contents of the petition differed in fact, from the recitals of it, contained in the orders of the court. The orders of the orphans' court, in reference to the sale of decedent's land, should show the grounds on which they are made, and their recitals, showing that a petition has been filed for this purpose, and setting out the substance of the petition, is evi-

dence of those facts. In the case of Duvals's heirs v. McLoskey, 1 Ala. Rep. 709, we held, that a decree of the orphans' court, ordering the land of a decedent to be sold, was not viod, because the petition was not produced, but that the recitals in the order, that a petition was filed, and which showed the ground on which the land was sought to be sold, was sufficient to sustain the jurisdiction of the court, and the decree directing the sale.

The orders of the orphans' court, in this case, shows that a petition was filed: they also show, the ground set forth in the petition, for the sale of the land. In the absence of the petition they are evidence of those facts. But we are asked to allow parol proof, to give a different version, as well as a different legal effect, to the petition, than the *record affords.* This, we think, would be a violation of a plain principle of law; it would be to permit parol proof, to vary the effect of a record ; for the best evidence of what the petition contained, is the record. The orders show, when the petition was filed, and what it contained ; they were made by one whose duty it was to make them, and we cannot permit them to be contradicted by testimony, dependent on the feeble memory of man.

This view is sufficient to dispose of the case, as it now stands before us, and we are unwilling to anticipate questions, that may hereafter arise, and we deem it unnecessary at this time to examine the other questions, growing out of the assignment of errors.

Let the judgment be reversed and the cause remanded.