# Wilburn & Co. *v.* McCalley.

# Fletcher *v.* McCalley.

*Bills in Equity by Heirs, for Injunction of Judgments against Administrator.*

1. *Rights of property under constitution.*—The constitutional provision which declares that no person can "be deprived of his property but by due course of law" (Art. 1, § 7), secures to every person the right to have notice of any judicial proceeding by which his rights of property may be affected, and an opportunity to be heard, and to contest every material fact involved in the proceeding; and any law authorizing a judicial proceeding, by which his rights of property might be divested or affected, without giving him such notice and opportunity, would be unconstitutional.

2. *Construction of statutes, when assailed for unconstitutionality.*—In the construction of a statute, when assailed on constitutional grounds, it is the duty of the courts to adopt, if possible, such a construction as will bring it within the range of the constitutional powers of the legislature, and not to impute to a co-ordinate department of the government a violation of the fundamental law of the land.

3. *Giving note by administrator, binding on estate; contents of petition.*—When an executor or administrator desires to procure an order of the Probate Court, authorizing him to give a note which shall be binding on the decedent's estate (Code, § 2432), his petition must aver that he is the personal representative; must describe the debt, and state whether it was contracted by himself or by the decedent; if contracted by him, must allege the consideration, showing that it is within the terms of the statute, and that it was necessary, and that it is a reasonable charge; and must also disclose the names, and residences if known, of the heirs, devisees, distributees, or legatees, who are interested in the property sought to be charged.

4. *Same; jurisdiction of court, and irregularities in proceedings.*—In a proceeding under this statute, the jurisdiction of the court attaches on the filing of a petition, containing the essential averments above stated; and when the jurisdiction has thus attached, by analogy to proceedings in that court for an order to sell a decedent's lands, subsequent errors and irregularities do not affect the validity of the order, when collaterally assailed.

5. *Same; notice to heirs, devisees, &c.*—Notice should be given to the heirs, devisees, or other parties in adverse interest, that they may have an opportunity to controvert the averments of the petition; yet, when the jurisdiction of the court has attached, by the filing of a proper petition, the failure to notify the heirs, &c., is a mere irregularity, and does not affect the validity of the order when collaterally attacked.

6. *Same; when order is void, and does not create cloud on title.*—If the petition of the administrator does not contain the averments necessary to give the court jurisdiction, an order founded on it, authorizing the administrator to give his note as prayed, would be *coram non judice*, and void; and a judgment rendered on the note, and a sale under execution thereon, would neither pass title, nor create a cloud on the title.

7. *Same; equitable relief to heirs or devisees.*—When an order is granted by the court as prayed, although the petition is substantially defective, the order being void, and a judgment rendered on the note being also void, the heirs or

VOL. LXIII.

[Wilburn & Co. v. McCalley.]

devisees can not maintain a bill in equity to enjoin a sale under it; and if the petition was sufficient, and they had due notice of it, they can not have equitable relief against the judgment, in the absence of fraud in the procurement of the order, or something equivalent to it; but, if the petition was sufficient, and they in fact had no notice of the proceeding, a court of equity will, at their instance, perpetually enjoin a sale of the property of the estate under a judgment on the note given by the administrator, on averment and proof that the debt for which the note was given was not, within the terms of the statute, a proper charge against the estate.

8. *Wife's separate estate, statutory and equitable; how charged.*—There is an essential difference in the manner of charging the statutory separate estate of a married woman and her equitable separate estate, or separate estate by contract: the former is charged by the statute (Code, § 2711) with the price of certain articles, the character of which is specified, and her agency in purchasing them is immaterial; while the latter can only be charged by the act and agreement of the wife, and, in the absence of restraining words in the instrument creating the estate, may be charged to the same extent as if she were a *feme sole.*

9. *Remandment, on reversal, for amendment of bill.*—When the chancellor overrules a demurrer to the bill for want of equity, and, on final hearing on pleadings and proof, renders a decree for the complainant; this court, on reversing his decree, and holding the bill demurrable, will remand the cause, in order to give the complainant an opportunity to ask leave to amend in the court below, unless the defects are not capable of amendment.

APPEAL from the Chancery Court of Madison.

Heard before the Hon. H. C. SPEAKE.

These two cases were argued and submitted together, and present precisely the same questions. The bills were filed by the same parties, and on the same day; and they are almost identical in language, except in the statement of names, amounts, &c., connected with the two judgments against which relief was sought. The bills were filed on the 2d September, 1875, by Archie McCalley and James R. Mc-Calley, children of Martha A. McCalley, deceased, and of William J. McCalley, her surviving husband; against the said William J. McCalley, as the administrator of his deceased wife, and three minor children of the said William J. and Martha A. McCalley, and Algernon S. Fletcher (in one case), and the partners comprising the mercantile firm of George W. Wilburn & Co. (in the other); and sought to perpetually enjoin, annul, and set aside two judgments, rendered by the Circuit Court of Madison, one in favor of said Fletcher, and the other in favor of said George W. Wilburn & Co. The bills contained the following allegations:

(1.) That complainants and defendants all reside in said chancery district. (2.) That the infant defendants have no guardian, and live with their father; and their ages are stated. (3.) That the complainants and said infant defendants are the children of said William J. and Martha A. Mc-Calley, who were husband and wife. (4.) That said Martha A. McCalley departed this life, in said county of Madison, on the 11th August, 1868. (5.) That prior to her death, and on

the 10th August, 1868, "she executed a paper purporting to be her last will.and testament, but the same was never probated ;" and that she died seized and possessed of certain lands, "which she held as her statutory separate estate," and which are particularly described. (6.) That, "on the death of said Martha A. McCalley, these lands descended to complainants and said" infant defendants, who were her only children. (7.) That letters of administration on her estate were duly granted, on the 16th April, 1870, to said William J. McCalley, and he is still acting as such administrator. (8.) That the said William J., as administrator of Martha A. McCalley, on the 26th August, 1872, executed a bond, which is set out, in the following words :

"Huntsville, Ala., August 26, 1872.
"Twelve months after date, as administrator of Martha A. McCalley, deceased, I promise to pay to A. S. Fletcher, or order, the sum of eight hundred dollars, value received. This note is given under section 2066 of the Revised Code of Alabama, to extend a debt due the late firm of Scruggs, Robinson & Fletcher, from the estate of Martha A. McCalley, deceased. This note is at this time the individual property of A. S. Fletcher, and is to bear interest from date. Witness my hand and seal." (Signed, "W. J. McCalley, adm'r of M. A. McCalley," and seal affixed.)

(9.) That said Fletcher, after the maturity of this note, instituted a suit on it, in the Circuit Court of Madison, against the said W. J. McCalley as such administrator ; and on the 19th June, 1875, recovered a judgment against him, for $979.54, besides costs. (10.) That an execution has been issued on this judgment, and is in the hands of the sheriff, and has been levied by him on the lands before described ; and he has advertised them for sale under the execution. (11.) "Your orators are informed that it is claimed by said Fletcher that said bond was executed by said W. J. McCalley as such administrator, under an order of the Probate Court of said county of Madison. Your orators do not know whether any such order was made, or not ; but, if such order was made, it was without authority of law, and in fraud of your orators and said" infant defendants ; "and your orators aver and charge that neither they, nor the said" infant defendants, "had any notice of any application for said order by the said W. J. McCalley as such administrator ; that they were not parties to said proceeding, either directly or indirectly ; and that they had no knowledge of the execution of said bond, until after said judgment was rendered, said execution levied, and said property advertised for sale. They

further allege that they are informed and believe, and upon. such information and belief charge the fact to be, that said bond was not executed to extend any debt contracted by the said Martha A. McCalley in her life-time, and that the same is not a charge upon her estate descended to them and the said" infant defendants. (12.) That when said bond was executed, and when said order was made (if any such was obtained), complainants were minors, and had no guardian; and they, with said infant defendants, resided with their father, the said W. J. McCalley. (13.) "They charge that the said W. J. McCalley never informed them of the existence of any such debt, nor of the existence of said bond; and they were'wholly ignorant of either of such alleged facts, until as hereinbefore mentioned." (14.) That said W. J. McCalley made no defense to said action at law, except to have an appearance entered by consent for a continuance, and judgment was rendered against him by *nil dicit*. (15.) They pray "that said Fletcher be enjoined from further prosecuting his said suit, and that said judgment be cancelled, set aside, and held for naught;" and the general prayer, for other and further relief, is added.

In the case against George W. Wilburn & Co , the allegations of the bill were, in substance and language, the same as above stated; but the note, which was set out, was as follows : "Huntsville, Ala., March 30th, 1874. Six months after date, with interest from date, I promise to pay to the order of George W. Wilburn & Co. the sum of seven hundred and fifty-three 97-100 dollars. This note is given pursuant to an order of the Probate Court, granted this day. Value received." (Signed, "*W. J. McCalley*, administrator of Martha A. McCalley, deceased.") The judgment on this note was also rendered on the 19th June, 1875, and was by *nil dicit.*

Answers were filed by said Fletcher and Wilburn & Co., which were substantially the same. They admitted the death of Mrs. McCalley, the grant of letters of administration on her estate, and that she was seized and possessed of the lands described in the bill, "which was her statutory separate estate;" but each answer was afterwards amended, by striking out this admission, and alleging that she held the lands as an equitable separate estate, under a deed of gift from her mother, Mrs. Ann Lanford, since deceased, a copy of which was made an exhibit to each answer, and by which the marital rights of said W. J. McCalley were excluded. Each of the respondents admitted, also, that Mrs. McCalley "did make a last will and testament before she died, and that the same has never been probated;" and they alleged that this

will was in the possession of the complainants and their father, and was fraudulently suppressed by them.

In reference to the note on which his judgment was founded, Fletcher answered thus : "Said bond was executed by said W. J. McCalley, administrator as aforesaid, for the purpose of extending or settling a debt of the estate of said Martha A. McCalley, upon his own application to said Probate Court; a copy of which, with the order of said court thereon, is herewith filed as an exhibit, marked A. F., and asked to be made a part of this answer. Said account, or debt, so extended, was contracted during the life-time of the said decedent, and was for goods, merchandise, and supplies furnished her, and which were articles of comfort and support of herself and family, suitable to the degree and condition in life of the said decedent, and for which the husband would have been liable at common law; and said goods were sold, and credit was given, upon the faith and credit of her said separate estate only." But this paragraph of the answer was afterwards amended, thus : "Said deed of conveyance, hereinabove set forth, vested said lands in said decedent to her sole and separate use, free from the management and control of her said husband, and was her equitable separate estate, and chargeable with her debts and contracts as if she were a *feme sole ;* and the consideration of said bond, which was the basis of said judgment, was for debts contracted during the life-time of the said Martha A. McCalley, upon the faith and credit of her said estate, her said husband being notoriously insolvent, and said debt is a charge upon and against said estate."

In reference to the debt due to George W. Wilburn & Co., said Wilburn & Co. answered : "Said note was given for the purpose of extending or settling a debt of the estate of said decedent, a part of which was contracted in her life-time, and a part of which was contracted by the said W. J. McCalley, as administrator of the said Martha A. McCalley, for articles for the said estate ; and said note was executed by authority of the Probate Court of Madison, which had jurisdiction of said estate. The order of said court to give said note was made under section 2066 of the Revised Code of Alabama. And defendants further say, that that part of the consideration of said note arising before the death of the said Martha A. McCalley was for articles of comfort and support of the household, suitable to the degree and condition in life of the family, and for which the husband of said decedent would have been responsible at common law;" and that the lands described were held and owned by Mrs. McCalley, at the time of the purchase of said articles, and at

the time of her death, as her statutory separate estate under the laws of Alabama. "A copy of the petition of said W. J. McCalley, as administrator as aforesaid, sworn to by him, and representing that respondents' said claim was a just claim against said estate, together with the order of said court thereon," was made an exhibit to the answer. These averments of the answer were afterwards changed by amendment, as in the former case, so as to show that the lands were held by Mrs. McCalley as an equitable separate estate under the deed from Mrs. Lanford, a copy of which was set out, and that the respondents' debt was a charge on that estate.

Each of said defendants demurred to the bill, for want of equity, and "because said bill shows on its face that the complainants are not entitled to the relief prayed, nor to any relief whatever." After the filing of the original answers, the defendants submitted a motion to dissolve the injunction, for want of equity in the bill, and on the denials of the answer; but the chancellor overruled the motion. The causes were afterwards submitted for final decree, on the bills and exhibits thereto, and the answers and exhibits thereto; and the chancellor rendered a decree in each case for the complainants, perpetually enjoining the judgments. The interlocutory decree on the motion to dismiss the injunction, and the final decree, are now assigned as error by said Fletcher and Wilburn & Co. respectively.

D. D. SHELBY, and BRANDON & JONES, with whom were CABANISS & WARD, for the appellants.—1. The injunction ought to have been dissolved on the denials of the answer, even if the bills contained equity.—*Satterfield v. John,* 53 Ala. 127; *Miller v. Bates,* 35 Ala. 580; *Rembert & Hall v. Brown,* 17 Ala. 667; *Yonge v. Shepperd,* 44 Ala. 315; and authorities cited in 1 Brickell's Digest, 677, § 548.

2. The bills contained no equity. The *gravamen* of each bill is, that the complainants were not notified of the administrator's application for an order authorizing him to extend the debts of the estate. But they were not entitled to notice. It is a strictly statutory proceeding, and intended for the benefit of decedents' estate. No notice is required to be given to the heirs or distributees, since the administrator himself represents their interests; and if he is guilty of any negligence, or other misconduct, by which their rights are prejudiced, they have a remedy on his official bond. There is no specific allegation of fraud in the judgments, and general allegations avail nothing.

3. The bills can not be sustained on the ground of re-

moving a cloud on the complainants' title to the lands. *Daniel v. Stewart*, 55 Ala. 278 ; *Longstreet v. Sedgwick*, 55 Ala. 291 ; *Lockett v. Hurt*, at the last term.

WATTS & SONS, *contra.*—The bills are not to be considered as ordinary bills to enjoin the collection of money under ordinary judgments and executions at law. Their purpose is, to annul and set aside judicial proceedings, which injuriously affect the complainants' rights ; to which they were not parties, and therefore could not appeal ; and of which they had no notice, actual or constructive. That no man's property can be taken from him, "but by due process of law," is a constitutional guaranty ; and that this implies and requires notice of any judicial proceeding, by which his rights are to be affected, is an elementary principle of law. To show a right to equitable interference in their behalf, it was only necessary for the complainants to acquit themselves of negligence, and file their bills before any sales were made under execution. The cases are the first that have arisen under this statute, which confers extraordinary powers on executors and administrators ; and the court will not put such a construction on the statute as will make it of doubtful constitutionality. If the bills are technically defective, the complainants should have an opportunity to perfect them by amendment.

STONE, J.—These cases present the same questions. According to the averments of the bills, Mrs. Martha A. McCalley, a married woman, made her will, and devised certain lands to complainants, her children. She died, and William J. McCalley, her husband, became her administrator. Under an order of the Probate Court, the said William J., as administrator, executed notes, expressing that they were given under section 2432 [2066] of the Code of 1876, " to extend a debt due from the estate of Martha A. McCalley, deceased." These notes were put in judgment against McCalley, as such administrator. The bills charge that, under executions issued on said judgments, the sheriff had levied on lands of complainants, which had come to them under the will of their mother, and would sell the same, unless restrained by injunction. The bills then aver, that the said devisees, complainants, had no " notice of any application for said order by the said William J. McCalley, as such administrator ; that they were not parties to such proceeding, either directly or indirectly ; and that they had no knowledge of the execution of said notes, until after said judgments were severally rendered, said executions levied,

and said property advertised for sale." Injunctions, restraining the sales, were granted on each of these bills; and the chancellor overruled a demurrer to them, and retained the injunctions. This decretal order is assigned as error in this court.

Section 2432 of the Code enacts, that "any executor or administrator, by authority of the Probate Court, given on his application, may, in his representative capacity, give his note, bond, or bill, for the purpose of extending or settling a debt of the decedent, or settling a debt contracted by such representative, for articles or for work and labor for the estate; and for such note, bond, or bill, the estate is liable, and the executor or administrator is not personally liable." It will be observed that the debts which the executor or administrator may settle under this section, are of two classes; first, a debt of the decedent; and second, a debt contracted by such representative for articles, or for work and labor for the estate. On no other consideration can such representative give a note, bond, or bill, and thereby fasten a liability on the estate. One effect of the giving of such note, bill, or bond is, that the personal representative, although the contracting party, fixes thereby no personal liability on himself. Yet the order, under which he obtains authority to bind, not himself, but the property of another, is obtained on his application. The effect of such order, when rightly obtained and acted on, is to bind the property of the testator, or intestate, against the claims of distributees, legatees, heirs, or devisees, if the statute be carried out according to its letter: a contract by, and judgment against one person, and a liability thereby fastened on the property of another, for its payment. Can this be done, without notice, and an opportunity to defend, given to those in whom the title of the property is vested?

The question, it seems to us, suggests its own answer. No person can " be deprived of his . . property, but by due course of law."—Declaration of Rights, § 7. The rights of use, enjoyment, and disposal are inherent in the ownership of property; and it is these rights the constitution guarantees. This provision of the constitution protects the rights of property, against legislative confiscation, and secures to every one a trial by judicial proceeding, before he can be devested of his title.—*Dorman v. The State*, 34 Ala. 216; *Sadler v. Langham, Ib.* 311; *Zeigler v. S. & N. Ala. R. R. Co.* 58 Ala. 594, and authorities cited. In the case last cited, we said: "Due process of law implies the right of the person affected thereby to be present before the tribunal which pronounces judgment upon the question of his life, liberty,

or property, in its most comprehensive sense; to be heard, by testimony or otherwise, and to have the right of controverting, by proof, every material fact which bears on the question of right in the matter involved."

If section 2432 of the Code must be construed as conferring the power on the Probate Court to grant the order therein provided for, on the mere *ex-parte* application of the personal representative, without notice to the heirs, devisees, distributees, or legatees, as the case may be, and without an opportunity for judicial contestation; and if, under it, a note, bill, or bond may be executed by such personal representative, and the estate, real or personal, of the decedent, become bound thereby,—such construction would force us to declare it unconstitutional. Such *ex-parte* order would not only not be "due course of law," but might, and probably would, be made the instrument of most alarming frauds. It is our duty, when we can, to so construe acts of the legislature, as to bring them within the range of constitutional power, and not to suppose that a co-ordinate department of the government has violated the fundamental law of the land.

The statute we are construing, is very brief in its expressions, if not meagre in its provisions. It makes no special mention of the facts necessary to be averred in the application, nor of the form it shall assume. It does not inform us who, if any, are to be made parties; who, or how to be notified; nor does it provide any machinery, other than the application, by which the judicial function is to be brought into exercise. Of course, the conditions on which the statutory power depends must be averred—namely, that the petitioner is the personal representative; that decedent left an estate, and died owing a debt, describing it, which it is the object of the petition to obtain authority to extend or settle; or, as the case may be, that the debt, describing it, was contracted by the personal representative, for articles, or for work and labor for the estate, and showing a sufficient reason why such debt was contracted by the personal representative; and that the debt, so contracted, was necessary, and a reasonable charge. The substance of the foregoing should be averred in the application; because each of the propositions is material, and upon each an issue of fact may be formed. An application to the Probate Court, under the statute we are considering, would be defective, and insufficient, if it did not contain the substance of all the above averments, and also disclose the names, and residences if known, of the heirs, devisees, distributees, or legatees, dependent on the inquiry, whether the decedent left a will,

[Wilburn & Co. v. McCalley.]

and whether the property sought to be charged was real or personal estate. And notice should be given to such heirs, devisees, distributees, or legatees, thereby giving them an opportunity to controvert the averments of the petition. The Probate Court should, in no case, grant such order, until every material fact specified above is established by proof.—*Brown v. Wheeler,* 3 Ala. 287; *McCurry v. Hooper,* 12 Ala. 823.

What is the effect of such order, when obtained, and what intendments are to be indulged in relation to such proceedings, when they come up collaterally? We do not doubt that, when an application is filed, containing the averments stated above as necessary, the Probate Court acquires jurisdiction to make the order. The rules which govern in such cases, must be assimilated to those which obtain in proceedings in the same court, for an order to sell property to pay debts, or for distribution. If the order be granted on a petition, such as that specified, then a sale made under a judgment rendered on a note, bill, or bond given under such order, will pass the title. If the application or petition be wanting in any of the material averments of fact, necessary to give the court jurisdiction, tested by the rules which prevail when the legality of an order of sale granted by the Probate Court is presented collaterally, then an order made on such petition is *coram non judice;* and a sale, made under a judgment rendered on a note, bill, or bond thus executed, would be void, and neither pass the title, nor create a cloud upon it.—1 Brick. Dig. 939, §§ 353, 355; *Bishop v. Hampton,* 15 Ala. 761; *Jones v. Jones,* 42 Ala. 218; 1 Brick. Dig. 940, §§ 364, 365; *Hoard v. Hoard,* 41 Ala. 590; *Pettus v. McLannahan,* 52 Ala. 55; *Bland v. Bowie,* 53 Ala. 152; *Arnett v. Bailey,* 60 Ala. 435; *Rea v. Longstreet,* 54 Ala. 291; *Lockett v. Hurt,* 57 Ala. 198. If, however, the application or petition contains the necessary averments to give the court jurisdiction, and the court commits error afterwards—such as, a failure to notify the parties in adverse interest—this would not avail, on collateral presentation, to avoid the order, the judgment, or the title acquired at a sale under it.—*Field v. Goldsby,* 28 Ala. 218, and authorities cited.

The extract from the bills in these cases, given above, contains all that is said about the application to the Probate Court for authority to execute the notes, brought to view in these suits. It does not state what the application contained; nor can we learn therefrom that it contained the necessary averments to give the Probate Court jurisdiction. If it did not, then the proceeding was *coram non judice* and void, and the Chancery Court would not entertain the bills. A

[Wilburn & Co. v. McCalley.]

title, acquired under such sale, would fall of its own weight; and, hence, it could not operate a cloud on the title of the devisees.—*Lockett v. Hurt, supra*. The present bills are defective, in that they do not show what the application contained. On the other hand, if the petition was sufficient, and the devisees had notice of its filing, and the Probate Court proceeded thereon to make the proper order, under which the notes were executed ; then, in the absence of fraud in the procurement of the order, or something equivalent to it, the complainants are entitled to no relief, and their bills are without equity.

There is a remaining phase of these cases. The liability of Mrs. McCalley's estate, if there be a liability, rests on the term of the statute, of which a copy is given above. Under that statute, as we have shown, the personal representative of an estate may obtain from the Probate Court authority to make a contract, for the performance of which the estate of his testator, or intestate, is liable. This is a new power conferred on representatives of estates ; a power, given by law, to one person, to bind, by his personal contract, the property of another. It is not for us to question the policy of this statute. Our duty is to expound and obey it.

In ordinary cases of sheriff's sales, or offers to sell real estate under final process, the execution is against the person whose land is sold, or sought to be sold. Hence, in an action brought to recover lands purchased at a sheriff's sale so made, the plaintiff need only show the judgment of the court, execution issued thereon, and the sheriff's sale and conveyance under the execution. This makes out his title; and errors committed before judgment, for which it would have been reversed on appeal, will not impair his title in the least. Even a failure of the record to affirm that the defendant had been served with writ or summons, will avail nothing in defense of the ejectment, if the court rendering the judgment had jurisdiction of the subject-matter.—1 Brick. Dig. 632, §§ 117, 118 ; *Budger v. Lyon*, 7 Ala. 564. If a sheriff were about to sell lands under an execution, issued on a judgment rendered in a suit of which the defendant had had no notice, it would become necessary for such defendant to move in the premises, before the sheriff perfected his sale and conveyance. If, in fact, the judgment had been rendered without notice to the defendant, and there was a valid defense to the action on the merits, chancery would intervene, re-try the question on the merits, and perpetually enjoin the judgment, if the defendant proved his defense, and the other allegations of his bill.—1 Brick. Dig. 670, §§ 435, 436 ; *Ib*. 668, §§ 409, 410.

[Wilburn & Co. v. McCalley.]

In analogy to this principle, we hold that, if the application to the Probate Court contained sufficient averments to give the court jurisdiction, and if the complainants (devisees) were in fact not notified; then, if the averments of their bills be true, the debts for which the renewed notes were given, were not the proper debts of Mrs. McCalley, and chancery will give relief, and perpetually enjoin the enforcement of the executions against the property of her estate. If the bills were so amended as to present this shape, they would contain equity.

There are apparent errors in the records we have not pointed out. The bills allege Mrs. McCalley's separate estate was statutory. The record tends to show it was equitable. This is a very material inquiry in these causes. The manner of charging the two estates is essentially different. The statutory estate is not charged by the contract of the married woman. She can make no contract, such as this. True, her estate may be charged, "for articles of comfort and support," under section 2711 of the Code of 1876. This, however, does not rest on the theory, that the wife has made the purchase. The husband may fasten this charge as well as the wife. It is a mere legal liability of the wife's estate, which the statute itself raises. The equitable estate is controlled by entirely different principles. It can be charged only by the act and agreement of the wife, and, unless there are restraining words in the instrument which creates it, she can charge it to the same extent as one *sui juris* could.—2 Brick. Dig. 86, §§ 211, 212, 213 ; *Cowles v. Morgan,* 34 Ala. 535 ; *Short v. Battle,* 52 Ala. 456. There would seem, also, to be a defect in the testimony, even if the averments of the bills were sufficient. The final decrees are also assigned as error, and this assignment must also be sustained.

The demurrers to the bills were overruled in the court below, and the bills pronounced sufficient. If they had been sustained, complainants, on their motion, would have been allowed to amend. We can not entertain a motion of that kind, and can not know whether an amendment can be made, which will impart equity to the bills under the principles of this opinion. Unless the bills are amended, so as to show that the application to the Probate Court contained the necessary averments to give that court jurisdiction, they will be wanting in equity, and the injunctions should be dissolved, and the bills dismissed. We reverse and remand the causes, in order that the chancellor may consider any application that may be made to amend the bills, and make all orders that may be necessary according to the principles of this opinion.

Reversed and remanded.