## WOOLFORK'S ADM'R vs. SULLIVAN.

1. A *bona fide* purchaser for valuable consideration at a public sale by an executor *de son tort* acquires at least a possession and right of possession, which he can maintain against all the world except the legal representative of the decedent, and as against him an actual possession of which he can only be deprived by suit.

2. An executor or administrator has power under our statutes to compromise or settle without suit the choses in action belonging to the estate.

3. When the evidence is conflicting on a question of fact material to the defence, the plaintiff is not entitled to a charge asserting his right to a recovery on the whole evidence.

ERROR to the Circuit Court of Pickens.

Tried before the Hon. THOMAS A. WALKER.

DETINUE by Alfred E. Going, as administrator *de bonis non* with the will annexed of Thomas Woolfork, deceased, against William Sullivan, for two negro slaves. The pleas were *non detinet* and the statute of limitations of six years.

On the trial, plaintiff proved the appointment of Ehud Nosworthy as administrator with the will annexed of said Woolfork in December, 1843, and his own appointment as administrator *de bonis non* on the 26th December, 1848; that said Woolfork owned said slaves at the time of his death in 1840, that they were demanded before suit brought, and their value.

The defendant then offered in evidence the record of the appointment of Nosworthy as administrator, the record of Woolfork's will, and its probate. The will is in these words: "I give my wife everything I possess during her widowhood; if she marries, she is to have third; not to give security when she qualifies, unless she marries, then to give security immediately. Given under my hand this 14th July, 1840;" and was duly signed and attested. Plaintiff objected to the admission of the will and its probate, as being irrelevant to the issue; but his objection was overruled, and he excepted.

Defendant then offered in evidence a transcript of the appraisement of property "shown to the appraisers as property of said Woolfork's estate by Nosworthy, the administrator, containing this item under the head of "debts due the deceased;"

"By John McKinney, one note, due 29th April, 1843," which was admitted by the court "as evidence to show that the note given for the negroes was received in due course of administration by the first administrator in chief." Plaintiff objected to the admissibility of said transcript, as being irrelevant and immaterial to the issues ; but his objection was overruled, and he excepted.

Defendant then offered to prove that Elizabeth Woolfork, the widow of the said Thomas Woolfork, deceased, although she had never qualified as executrix, after having given notice of the time and place of sale in January, 1841, holding herself out as executrix, sold the slaves in controversy at public auction, and that one John McKinney became the purchaser, for the sum of $723, which was their full value. To the admission of this evidence the plaintiff objected, because it was wholly irrelevant and immaterial to the issue, and could not legally affect the rights of the parties to this suit ; but the court overruled the objection, and plaintiff excepted.

Defendant then introduced a bill of sale for said slaves from Mrs. Woolfork to one Dempsey Bonner, after having proved its execution, and shown that it was executed to said Bonner instead of said McKinney by agreement between them ; and an assignment endorsed on it by said Bonner to the defendant. Plaintiff objected to these papers, on the ground of irrelevancy ; but his objection was overruled, and he excepted.

Defendant then produced a note for $723, made by said John McKinney, payable to said Elizabeth Woolfork as executrix of Thomas Woolfork, deceased, dated January 15, 1841, and proved that it was the note given by said McKinney for the purchase money of said slaves. Plaintiff objected to its admission as evidence, because of irrelevancy ; but the objection was overruled, and he excepted.

Defendant further offered to prove that said John McKinney had paid to one Bartley Upchurch, who was the agent of Mrs. Woolfork, the full amount of said note, except the sum of about $105, and for this balance had given a new note ; and that after the appointment of said Nosworthy as administrator said Upchurch had a settlement with him, as such administrator, and passed over to him said new note as a part of the assets of the estate. Plaintiff objected to this evidence, on the ground of

irrelevancy; but his objection was overruled, and he excepted.

Defendant further offered to prove that said Nosworthy, as administrator of Woolfork, collected said note from McKinney, knowing at the time that it was a part of the purchase money for said slaves. Plaintiff objected to this evidence, his objection was overruled, and he excepted.

It was further proved that Nosworthy, at the time of his said settlement with Upchurch, knew that said slaves had been sold by Mrs. Woolfork, and that said note for $105 was for a part of the purchase money; that the proceeds of that note constituted the only portion of the proceeds of said sale ever received by said Nosworthy; that all the balance of said note for the purchase money had been collected by Upchurch before the appointment of Nosworthy as administrator, and about $425 of the proceeds applied in payment of debts contracted by said Thomas Woolfork in his life-time, and $295 applied in payment of debts contracted by Mrs. Woolfork after his death for the use of the family; that a regular account current was made out by Upchurch at the time of said settlement, and full settlement was made, with the understanding that any mistake should be corrected; that Upchurch then passed over to Nosworthy the note above referred to, and between $200 and $300 in cash, the proceeds of the property, and Nosworthy gave him a receipt therefor, but gave him no release or discharge from any liability which he might be under for having intermeddled with the estate of said Woolfork.

There was some proof tending to show a final settlement and satisfaction between Nosworthy and Mrs. Woolfork for her sale of the property, but as to this it was doubtful. It was also shown that Mrs. Woolfork married in the fall of 1843, and that said Thomas Woolfork left six or seven children living at the time of his death, some of whom were still living. There was also some other proof in relation to the value of the slaves, and this was all the evidence in the cause.

The court charged the jury, that the sale made by Mrs. Woolfork of the slaves in controversy was a nullity and void, but the administrator in chief, Nosworthy, after he was duly qualified, had the right to waive the tort, and sue Mrs. Woolfork for the money; and that having this right, he had also the right to receive their value from Mrs. Woolfork or her agent,

Upchurch ; and if the jury believed from the evidence that said Nosworthy, as such administrator in chief, had received from said Upchurch, or from McKinney, or from both, full satisfaction for the value of said slaves, then plaintiff cannot recover in this action. To this charge plaintiff excepted,

The plaintiff requested the court to charge, that, if the jury believed from the evidence that the whole amount for which said slaves were sold by Mrs. Woolfork was not actually paid in cash to said Nosworthy, the administrator in chief, although they might believe that a settlement of the claim was acknowledged to have been made by Nosworthy to Upchurch, in whose hands the money was, it would not amount to a satisfaction which would authorize a verdict for the defendant. This charge the court gave, but with this qualification : "that a mere acknowledgment of satisfaction was not sufficient, but there must be an actual satisfaction in cash or its equivalent. If the jury believe from the proof that a part was received in money from Upchurch, and a part in the note of McKinney, the purchaser of the negroes, which was afterwards paid to Nosworthy, and the balance was in discharge of debts against the estate of Thomas Woolfork, deceased, which Upchurch had paid as the agent of the widow, and these vouchers were taken by Nosworthy in due course of administration, then plaintiff cannot recover." To this qualification of the charge the plaintiff excepted.

Plaintiff further requested the court to charge the jury, that, if they believed the evidence in the case, they must find for the plaintiff; which charge the court refused, for the reason that there was some conflict in the evidence as to whether full satisfaction was received by the administrator for the slaves sued for.

The errors assigned are : 1. In admitting testimony against plaintiff's objections, as shown in the bill of exceptions ; 2. In refusing to charge as requested by plaintiff, and in giving the charges excepted to.

S. F. HALE and J. L. MARTIN, for plaintiff in error:

1. The admission of irrelevant testimony against the objection of the adverse party, is error.—9 Ala. 534; 4 Ala. 40.

2. The title to the personal estate of a deceased person vests in his personal representative when appointed, and has relation

back to the death of the testator or intestate ; and a sale thereof, if made by any other person, or even by the personal representative otherwise than as provided by statute, is void, and confers no rights upon the vendee.—12 Ala. 532 ; 15 Ala. 707; 9 Ala. 912 ; 4 Ala. 443 ; 12 Ala. 298 ; 10 Peters 161 ; 4 Munford 174 ; 4 Harr. 168 ; 18 Ala. 828. The estate cannot be divested of title in any other way than as provided by law. 1 Howard's Miss. R. 561.

3. In an action of detinue, the legal title only is in controversy ; and the only inquiry in this case is, has the estate of Woolfork been divested of the legal title to the slaves in controversy. The equitable rights of the parties cannot be regarded.—14 Ala. 182 ; 6 S. & M. 78.

4. If the administrator in chief, Nosworthy, had sold these slaves otherwise than as provided by statute, although he had received the whole amount of the purchase money, and appropriated it in due course of administration, the sale would have been void, and the purchaser would have received no title.—4 A. 443. He cannot, then, affirm and make valid the act of another which is contrary to law, and therefore void, and which he himself could not have done.—12 Ala. 532.

5. Admit that an administrator in Alabama has all the powers of an administrator at common law, and can do all the acts which such an administrator might do, except in so far as he is inhibited by statute ; yet, this admission does not benefit the defendant, for, as above said, the title to the personal estate of a decedent vests in his personal representative when appointed, and has relation back to the death of the decedent. The slaves in suit were in the possession of Woolfork at the time of his death, and were therefore not a chose in action, but a chose in possession, the title to which vested in the administrator on his appointment ; and the very thing which the statute forbids is the divestiture of this title out of the estate by the administrator, otherwise than as provided by statute.

In the case of Carpenter v. Going, 20 Ala. 587, this court decided, that the receipt of full satisfaction by the wrong-doer, who had improperly disposed of property belonging to the estate, and the application of the amount so received to the payment of the debts of the estate in due couse of administration, did not divest the title of the estate to the property. It is ad-

mitted that the wrongful sale does not divest the title, and the above case shows that the receipt of satisfaction by the estate is equally ineffectual for that purpose. And in 4 Ala. 443, this court decided, that, where the administrator himself had committed the wrong, by a sale of the property of the estate otherwise than as provided by law, and received the full value of the property in satisfaction of that wrong, and appropriated it in due course of administration, yet the estate was not divested of the legal title to the property. It is certainly impossible to conceive how the act of the administrator in receiving satisfaction for the wrong of another can be more potent in divesting the title of the estate which he represents, than the same act of his in receiving satisfaction for a like wrong done by himself.

E. W. PECK, contra :

Administrators in this State have all the powers of administrators at common law, except where their powers are regulated and limited by our statutes. By the common law, they might sell the estate of their intestate at private sale. By our statutes this power is taken away, but for injuries done to the estate all their common law rights and remedies remain unaffected by our statutes.—Upchurch v. Norsworthy, 15 Ala. 705, 707.

The sale of the slaves sued for, made by the widow of the deceased, was void. It was a wrong done to the estate—a conversion, not by the widow only, but by the purchaser. On the appointment of Nosworthy, the administrator in chief, the title vested in him, notwithstanding said sale ; yet, inasmuch as they were then in the possession of the defendant, claiming to hold them under a purchase made in good faith from the first vendee, the right of the administrator in chief was a right of action merely, (10 Ala. 819;) and although, if in possession, he could not have sold them without complying with the regulations of the statutes in such cases, yet, as the possession was in fact in another, and he only had a right in action, this right he might enforce by suit, or settle without suit ; and either course, when it resulted in a satisfaction as to these slaves, would be an administration pro tanto of the estate, and therefore the title to them, by operation of law, would in such case pass out of the administrator, and vest in the party in the possession.—1 Williams on Executors 508-9 ; Upchurch v. Norsworthy, supra ; Beattie v. Abercrombie et al., 18 Ala. 9, 18, 19.

An administrator may submit a claim of the estate to arbitration.—Alling v. Munson, 2 Conn. 694, 696; 1 Brock. R. 230, 231. He may, also, release all personal claims of the estate, compound them, &c.—18 Ala. R. *supra*, 19 ; 2 Conn. R. *supra*, 696. And if, in such cases, he act in good faith, he will not be subject to liability to any one ; but if he do not, and the estate be thereby injured, he may be liable to the creditors or distributees as for a *devastavit*, but not to the administrator *de bonis non*, for the administrator *de bonis non* is only entitled to the goods and chattels, rights and credits, of the intestate that remain unadministered by the administrator in chief.

The plaintiff insists, that if Nosworthy, the administrator in chief, had sold the property, but not in the way authorized by the statute, the vendee would have acquired no title by such sale. The admission of this proposition can do the plainiiff no good, because it stops short of the principle on which the defence in this case rests. But suppose, after such sale, and after the appointment of the plaintiff as administrator *de bonis non*, he had elected to waive the tort, (and this he might have done on the authority of Upchurch v. Norsworthy, adm'r, *supra*,) and had settled with the purchaser, and received the value of the property in satisfaction of his claim, and then had resigned without finally closing the administration, and another administrator *de bonis non* had succeeded him, could such second administrator *de bonis non* have brought his action and recovered the property, after such settlement and satisfaction ? Certainly not; he would be barred by the act of his predecessor. The case in hand is, in principle, the very case supposed.

The proposition of the plaintiff depends mainly on the case of Hopper v. Steele, 18 Ala. 828. The decision in that case is the decision of a divided court—the late Chief Justice dissenting, and Judge Parsons agreeing with the opinion of the present Chief Justice, from a supposed necessity imposed on him by the decision in Swink's adm'r v. Snodgrass, 17 Ala. 653.

Although it is unnecessary in this case to come in conflict with the case of Hopper, adm'r, v. Steele, yet, I am persuaded that that case goes beyond the true limits of the principle upon which it is based. Every principle hath its limits. Truth and error have ever lain side by side, and many a sincere inquirer after truth, from the want of due caution, or led astray

by false lights, or in the ardor of the pursuit, hath run beyond the boundaries of truth, and fallen into the meshes—been entangled, overcome and taken, by the deceits and subtleties of error, and remained a captive all his days.

PHELAN, J.—Where an executor *de son tort* has sold at public sale the personal property of a testator, and an administrator is afterwards appointed, what right or interest in respect to such property vests in such administrator? and what are his powers and duties in reference thereto by the laws of Alabama? These are the questions presented for our decision by the case at bar.

The sale of the personal chattels of a testator by one who usurps the office of executor whether wilfully or ignorantly, and who is styled executor *de son tort,* is unlawful, whether it be public or private, and conveys to the purchaser no title. That is clear. Hence the sale by Mrs. Woolfork conveyed no title to the slaves in controversy, and was a conversion of the property of the estate, in her and her vendee. Still it conveyed what she had, the possession. Being in possession as widow, (for she was widow and sole legatee,) and holding herself out as executrix, she advertised and sold this property as such at public sale, and McKinney, defendant's vendor, became the purchaser, in good faith and for a full consideration. There cannot be any doubt that he acquired thereby at least a possession and a right of possession, which he could maintain against all the world except the administrator of Woolfork. He is surely in no worse condition than a vendee from an administrator by a private sale, which the statute expressly forbids, and which our courts have repeatedly pronounced to be absolutely void.— Clay's Digest 223 § § 13, 14; 4 Ala. 442. And yet such a vendee will be protected in his possession against every one but the administrator *de bonis non.* Even the administrator himself who made the sale cannot reclaim the possession, for he is estopped by his acts from the right to sue, (Pistole v. Street, 5 Por. 64,) and an execution against the goods and chattels of the testator cannot be levied on the property so as to take it:—4 Ala. 442, *supra.*

We are then constrained to hold, that a *bona fide* purchaser, for a valuable consideration, at a public sale made by an execu-

tor *de son tort*, aquires a right of possession in a personal chattel which he may maintain and defend against every one but the proper legal representative of the testator ; and that, furthermore, he acquires an actual possession as against him also, of which he cannot be lawfully deprived against his will except by suit.

The necessary conclusion from these premises is, that the interest or right which an administrator acquires under such circumstances is a right of action only, what is called a *chose in action*, when we mean to speak of it as property, as something that has value, like a promissory note in its general nature, though differing in some respects.

2. The question now remains, What are the rights and powers of an executor or administrator respecting the *choses in action* of his testator or intestate ? Can he compromise or settle them without bringing suit ?

We do not understand the doctrine to be questioned on either hand, that an executor or administrator in this State has all the rights and powers which he has by the common law, except so far as those rights and powers have been modified or abridged by statute.

But the power of an executor or administrator to compromise actions pending in favor of, or rights of action belonging to the testator or intestate, by the common law, if done *bona fide*, is not denied, and this power has not been affected by statute in Alabama. It can hardly be insisted that the statute (Clay's Digest 223 § 13) which directs the mode in which executors and administrators shall proceed to effect a sale of the "personal estate of any testator or intestate," and directs that it shall be done publicly, and at a certain place and within certain hours, was intended to embrace the notes and bonds or open accounts due to a testator or intestate. Such a thing has never been heard of in the country. Much less could it have been intended to relate to choses in action, whose value would be still more obscure at a public sale. It follows that an executor or administrator in this State has the power in question, and by necessary consequence the right, to this extent, at least, to transfer by private sale or contract the choses in action over which this power to compromise and settle without suit exists ; for what is the release of an action already begun, or the transfer of a right

of action, but a private sale of the benefit or interest to be derived from it ?

Following up these conclusions we may say, the sale of these slaves by Mrs. Woolfork was an unlawful conversion of the property of the estate; yet, by the transaction McKinney was invested with a possession, which could not be lawfully taken away except by suit. No execution could be levied on them as the property of Woolfork, the testator, and it would amount to a trespass for any to attempt to take them by mere force.— When Nosworthy was appointed administrator of Woolfork, he had in respect to these slaves nothing left in him but a right of action, with several modes of prosecuting that right, either of which he might pursue ; detinue or trover against the person in possession ; trover against the widow Woolfork, or, if the purchase money had been received by her, or her agent, of McKinney, he might waive the *tort* and bring an action against her for that amount of money of the testator had and received to his use.

Having this right and such an interest and no more, and being invested by his office and the law with the power, in his discretion, to bring suit or to compromise and settle the claim without suit, he was not absolutely bound to sue and recover the property itself, or have its value ascertained by suit ; but, if acting *bona fide*, without fraud or collusion, he might settle the claim without suit, and release and discharge this right of action to any of these parties for a valuable consideration. The interests of creditors and distributees require, as we feel well persuaded, that executors and administrators should have such a power.— A judicious and timely compromise would often prove highly beneficial to creditors and distributees. The fidelity of the administrator, the *bona fides* of his conduct in making such settlement or compromise, would be always open to inquiry by the parties in interest.

These principles, if correct, establish the right of the administrator, Nosworthy, to receive satisfaction from Mrs. Woolfork or McKinney, or both, without suit, for the unlawful conversion of the slaves in controversy. He was at liberty to elect whether he would do this or sue, being responsible of course to the legatees and distributees on settlement for the exercise of a sound discretion, and for honest intentions in making such election.

The charge given by the court below was in conformity with the foregoing views, as was also the qualification annexed to the charge as requested by plaintiff.

The request of the plaintiff, to charge that he was entitled to a verdict upon the whole evidence, was correctly refused, because, on one material question of fact the testimony was conflicting.

We find no error in the record, and the judgment below is affirmed.