# WYATT'S ADM'R *vs.* RAMBO.

[TROVER FOR SLAVES BY ADMINISTRATOR AGAINST PURCHASER AT SALE UNDER
ORDER OF ORPHANS' COURT BY PREVIOUS ADMINISTRATOR.]

1. *Pleading—How administrator must declare.*—An administrator, suing in trover
for a slave, may declare on his own prior possession in his representative
capacity, though he has never had possession ; and if the words "as admin-
istrator as aforesaid" are added to each material averment of the declaration,
they are not to be regarded as mere matter of description, but indicate the
character in which he sues.

2. *Validity of sale of personalty by administrator.*—A sale by an administrator, of
the personal property of the estate, without the authority of an order of
court, or of a will, or under an order of court which is void for want of
jurisdiction, does not confer on the purchaser a title which is available
against a succeeding administrator.

3. *Validity of order of sale.*—An order of the orphans' court, which merely
grants leave to the administrator to sell the perishable property of the
estate, and directs him to make due return of his proceedings, but which
does not appear to have been founded on the petition of the administrator,
and does not allege or show that any necessity for the sale existed, is a
nullity.

4. *Jurisdiction of orphans' court to order sale of personalty.*—Although the orphans'
court, under the general powers conferred on it by the act of 1806, (Clay's
Digest, 300, § 21,) may have been a court of general jurisdiction ; yet, as
to its power to order a sale of the personal property of an estate, which it
derived exclusively from the act of 1809, (*Ib.* 223, § 13,) it must be consid-
ered a court of special, or limited jurisdiction, and its records, therefore,
must affirmatively show the facts necessary to sustain its jurisdiction.

5. *Judicial ascertainment of jurisdictional fact.*—If a court of limited jurisdiction
is charged with the ascertainment of a jurisdictional fact, and its proceed-
ings show that this fact was ascertained, it cannot be collaterally impeached;
but the ascertainment of such jurisdictional fact cannot be inferred from
the mere exercise of jurisdiction by the court.   (Overruling Wyatt's Adm'r
v. Steele, 26 Ala. 639.)

6. *Statute of limitations commences to run when.*—Where a slave is sold by an ad-
ministrator in chief under an order of court which is void for want of
jurisdiction, the statute of limitations does not commence to run in favor
of the purchaser until the appointment of a succeeding administrator.

APPEAL from the Circuit Court of Lowndes.

Tried before the Hon. C. W. RAPIER.

THIS action was brought by the appellant, to recover a
slave named Maria, and her three children, and was com-

menced in March, 1852. The material parts of the declaration, which are necessary to a correct understanding of the question of pleading here decided, are as follows : "Thomas M. Williams, administrator of all and singular the goods and chattels, rights and credits, which were of Peter Wyatt, deceased, at the time of his death, left unadministered by William N. Mock, now deceased, and Mary A. E. Wyatt, who has lately intermarried with Thomas D. Armstrong, during their administration, their letters being now respectively revoked ; which said Mock, and Armstrong and wife, in his (Mock's) lifetime, and at the revocation of their letters respectively, &c., were the administrators of Peter Wyatt, deceased ; complains of Lawrence Rambo," &c., " of a plea that he render to the said plaintiff, administrator *de bonis non* as aforesaid, the following slaves," &c., " the property, goods and chattels of the said plaintiff, as such administrator aforesaid, which he unjustly detains, and converts to his own use. For that whereas the said plaintiff, as such administrator *de bonis non* as aforesaid, heretofore," &c., " was lawfully possessed of the following slaves," &c., " as of his own property as such administrator aforesaid ; and being so possessed thereof, he, the said plaintiff, afterwards," &c., " casually lost the said slaves out of his possession ; and the said slaves afterwards," &c., " came to the possession of said defendant by finding ; yet the said defendant, well knowing the said slaves to be the property of the said plaintiff, as administrator as aforesaid, and of right to belong and appertain to him, hath not delivered the said slaves to the said plaintiff," &c., " and hath detained, and doth still detain the said slaves from the said plaintiff, at," &c., " to the damage of the said plaintiff as aforesaid $4,000;" &c., " and the said plaintiff as aforesaid here comes into court, and produces his letters of administration *de bonis non* as aforesaid."

No pleas appear in the record.

" On the trial," as the bill of exceptions states, " the plaintiff made title to the slaves as follows :—He proved that Peter Wyatt died many years ago, and was possessed, at the time of his death, of the negro woman Maria now in controversy ; that said woman had three children when this suit was brought, and was, with her children, in the possession of

the defendant ; that Mrs. Mary A. E. Wyatt, the widow of said Peter Wyatt, and William Mock, administered on said estate, gave bond, and entered on the discharge of their duties ; that said Mock and Mrs. Wyatt, never having settled their said administration in any way, were removed from office on the 8th day of May, 1852, and plaintiff was then appointed administrator *de bonis non*, and entered on the discharge of his duties. He also proved the value of the slaves, and of their hire, and then closed.

"The defendant then offered in evidence certain orders, made on the 4th November, 1833, by the orphans' court of Lowndes county ; in which county said administrations were granted. The said orders read as follows : ' Ordered by the court, that the administrators of Peter Wyatt, deceased, have leave to sell all the perishable property of said deceased, upon a credit of at least six months.' ' Ordered by the court, that said administrators do make a full and true inventory of said sale, and return the same to this court the first term thereafter.' ' Ordered by the court, that said administrators give a notice of said sale, by advertising at three or more public places in said county, at least thirty days previous thereto, of the time and place of said sale.' ' Ordered by the court, that the administrators of the estate of Peter Wyatt, deceased, have leave to sell the present crop of cotton, at public or private sale, as they may deem most advantageous to said estate.' The plaintiff objected to this evidence ; the court overruled the objection ; the evidence was read, and the plaintiff excepted.

"The defendant then proved, that said administrators in chief, on the —— day of ——————, having advertised the personal property of said Peter Wyatt, sold the same publicly, and to the highest bidders ; that the woman Maria was sold with the other slaves, and was bought by Mrs. Wyatt, through whom the defendant derived title. The defendant then offered in evidence the sale-bill of said administrators, including the slave Maria, and many plantation articles and stock ; to which the plaintiff objected. The court overruled the objection ; the evidence was read, and the plaintiff excepted. The defendant then offered in evidence an order made by said orphans' court in March, 1834, on the report of

sale made by said administrators in chief; which order is in the following words : ' Now, at this term of the court, William N. Mock, one of the administrators of the estate of Peter Wyatt, deceased, came into court, and made return of a sale-bill of the property of said deceased ; whereupon it is ordered by the court, that the clerk enter upon record the sale-bill in the inventory book kept for that purpose ; and it is further ordered by the court, that the clerk file in his office the original sale-bill as an office document.' To this evidence the plaintiff objected ; his objection was overruled ; the evidence was read, and the plaintiff excepted.

"This was all the evidence in the case, and there was no contest about the facts ; and it was agreed that the court might pass upon the above statement as the facts of the case, without *hypothecating* (?) in the charge to the jury. On this state of facts, the court charged the jury, that the plaintiff could not recover ; and the plaintiff excepted."

The charge of the court is now assigned as error.

The case was argued, both orally and in writing, by Thomas Williams, for the appellant, and Thos. H. Watts and D. W. Baine, for the appellee ; and on the rehearing, after the delivery of the first opinion of the court, a written argument was submitted by Alex. White, in behalf of the appellee. From these arguments, which are too long for insertion in full, the subjoined briefs are condensed.

*Points and authorities for the appellant.*

1. The order of sale, under which the defendant derived title to the slaves, conferred no power on the administrator to sell the slaves belonging to his intestate's estate. The court had no power to order a sale of the personal property belonging to the estate, unless it was shown that a sale was necessary, either for the payment of debts, or for distribution. Clay's Digest, 223, § 13 ; *ib.* 196, § 22 ; Wyatt's Adm'r v. Steele, 26 Ala. 650. The order of sale, which was made at the same time administration was granted, does not show that there was any necessity for the sale, nor that the court decided that such necessity existed. The record of a court of limited jurisdiction, which the orphans' court undoubtedly

was, must affirmatively show every fact necessary to support
its jurisdiction, and nothing can be implied, or presumed, in
their favor.—Commissioners' Court of Talladega v. Thomp-
son, 15 Ala. 139 ; same case, 18 Ala. 697 ; Gunn v. Howell,
27 Ala. 663 ; McCartney v. Calhoun, 11 Ala. 110 ; Duck-
worth v. Johnson, 7 Ala. 578 ; Sasnett v. Weathers, 21 Ala.
673 ; Noles v. The State, 24 Ala. 695 ; Harrington v. The
People, 6 Barbour, 607. The case of Wyatt's Adm'r v. Steele,
26 Ala. 640, is contrary to the uniform current of decisions ;
is not maintainable on principle or authority ; and has been
overruled, in effect, by subsequent cases. That the order
may be assailed for want of jurisdiction, see Miller v. Jones,
26 Ala. 259.

2. But, if it is to be presumed that the court decided the
question whether a sale was necessary, the order merely con-
ferred the power to sell " the perishable property " of the estate,
which did not include the slaves.—3 Munford, 288 ; 2 N. H.
37 ; 2 McMullen's Equity R. 459 ; Sergeant on Attachment,
18 ; Conkling's Admiralty Practice, 485, 507. The case of
Steele v. Wyatt's Adm'r, 23 Ala. 764, cannot be regarded as
a correct exposition of the law ; and the subsequent decision,
26 Ala. 640, was based on the conclusiveness of the former.

3. The sale, though binding on the immediate parties to it,
was void as against all others having an interest in the estate.
Weir v. Davis, 4 Ala. 442 ; Dearman v. Dearman, *ib.* 521 ;
Fambro v. Gantt, 12 *ib.* 490 ; 10 Peters, 161 ; 1 Howard
Miss. R. 558 ; 2 Smedes & Mar. 527 ; 14 *ib.* 187 ; 1 Hill's
(S. C.) R. 83 ; 17 Ala. 653 ; 18 *ib.* 828 ; 20 *ib.* 345.

4. As the contract was in violation of a positive statute,
the administrator in chief was estopped from bringing an ac-
tion to recover the property ; and therefore the statute of
limitations is no bar to an action by the administrator *de
bonis non.*—Lawson's Adm'r v. Lay's Executor, 24 Ala. 184 ;
Angell on Limitations, 65 ; 3 Stew. 172 ; 5 Porter, 64 ; 4 Ala.
449 ; 7 *ib.* 359 ; 3 Meeson & Welsby, 240 ; 19 Conn. 338 ;
Story on Contracts, § 491 ; Smith on Contacts, 93.

*Points and authorities for the appellee.*

1. The charge of the court was correct, because there was
a fatal variance between the pleadings and proof. The

pleadings, in effect, indicate a suit by the plaintiff as an indi-
vidual, and not as administrator ; while the proof shows no
right of recovery in him as an individual.—Gibson v. Land,
27 Ala. 125 ; Agee v. Williams, 27 *ib.* 644 ; Smith v. Wiley,
19 *ib.* 219 ; Worden v. Worthington, 2 Barbour's (S. C.) R.
369. The character in which the plaintiff sues is not changed
by the allegation that he was in possession of the slaves " as
administrator " : that averment is consistent with his right
to recover as an individual, and, if proved, would entitle
him to recover as an individual.—Sheldon v. Hoy, 11 How-
ard's Practice R. 11. Moreover, the plaintiff declares, not
upon the title of his intestate, but upon his own prior pos-
session as administrator ; and it is a universal rule, both at
law and in equity, that the plaintiff can only recover on the
right which he sets up in his pleadings.—McKinley v. Irvine,
13 Ala. 700.

2. The charge of the court may also be maintained, aside
from the question of the validity of the order of sale, upon
another ground. The statute of limitations was a complete
bar to the plaintiff's recovery. That it was not necessary
to plead the statute specially, see Lay's Executor v. Lawson's
Adm'r, 23 Ala. 377. There can be no doubt that the lapse
of time was sufficient to effect a bar, if there was any person
in existence who was authorized to sue for the property ; and
it is insisted that the administrator in chief, who made the
sale, might have maintained the action. The cases of Pistole
v. Street, 5 Porter, and Hopper v. Steele, 18 Ala., which are
cited against this position, are not conclusive as authority, nor
defensible on principle, nor sustained by the cases therein
cited. Hopper v. Steele is based on the authority of Pistole
v. Street, and is entitled to no weight, because the opinion
was published by mistake after it had been withdrawn.—See
Note to table of *Errata*, 18 Ala. 8. What is said on the
point in Pistole v. Street, 5 Porter, is a mere *dictum* of the
judge who delivered the opinion, as shown on page 69 of the
report. The case itself has been doubted.—Weir v. Davis,
4 Ala. 445. The authorities cited in support of the *dictum* do
not sustain it.—P. 71. A sale by an administrator, without
an order of court, is not within the scope of his duties, but is
violative of a positive statute. It is not done in his official

character, but as an individual, and does not affect the title of the estate. He, as the representative of the estate, must have the right to recover its property ; otherwise, a succeeding administrator, who is only substituted to the rights and powers of the administrator in chief, cannot recover it. The doctrine of estoppel has no application to the case. The administrator, in his official capacity, as the representative of the estate, is a different person from the individual. It might as well be asserted, that an act done by one as an individual, or an admission made, would estop him from asserting the truth in any fiduciary or representative capacity ; or that a recovery against him individually would conclude him as to any defense which he might have when sued as the representative of another.

3. The case of Steele v. Wyatt's Adm'r, 23 Ala. 765, and 26 Ala. 640, is conclusive as to the validity of the order of sale ; and is sustained by Millard's Adm'rs v. Hall, 24 Ala. 210.

4. But, if the former decision involving the validity of the same order of sale is not held conclusive, its correctness is maintainable on principle. The general rule is admitted, that courts of limited jurisdiction must make their records affirmatively show all the facts which are necessary to support their jurisdiction ; but the principle does not apply to decrees of the orphans' court like the one now under consideration. Proceedings to obtain an order to sell property are *in rem*, and there is no person of whom to take jurisdiction. Wyatt v. Campbell, 6 Porter, 232. The subject-matter of the decree is the personal property named in it ; and the turning point is, how does the court obtain jurisdiction over it ? The orphans' court, within the sphere of subjects-matter confided to it, is a court of general jurisdiction, equally with the circuit court ; the jurisdiction of both being dependent upon the provisions of the constitution. The orphans' court, when created, acquired general and exclusive jurisdiction over the personal estates of decedents, the granting of letters testamentary, &c. The extent of its jurisdiction, as to these subjects, must be determined by reference to the powers and jurisdiction of similar courts in England and the older States of the Union. By the common law, with the statutory modifications which existed in England when our ancestors emi-

grated from that country, the power of the ordinary over the personal estates of decedents, which was originally absolute and unqualified except by the duty enjoined to dispose of it to "pious uses," was somewhat restricted by the statute 31st Edw. III ; but its grant of administration conferred on the administrator full power to sell and dispose of the personalty. The act of 1806 (Clay's Digest, 300, § 21) vested the orphans' court with "full jurisdiction of all testamentary and other matters pertaining to an orphans' court or court of probate." The act of 1809 (ib. 223, § 13) did not affect the jurisdiction of the court, but was only intended to limit the powers of the administrator in disposing of the personalty. The court confers on the administrator all his powers, and is not dependent on his act for its jurisdiction of the estate. The jurisdiction of the court as to the realty is the creature of the statute, and is dependent upon a different principle. This distinction explains a long list of cases, beginning with Campbell v. Wyman. Where the court has jurisdiction of the subject-matter, it will be intended that its decree was founded on the necessary evidence.—Key v. Vaughn, 15 Ala. 497. The jurisdiction of the orphans' court over the personalty being plenary, all necessary intendments will be made in favor of its decrees; and the fact that nearly all the personal property in the State must, in the general course of things, pass through this court once every thirty years, and the known constitution of the court, require that the most liberal presumptions should be indulged.

WALKER, J.—The argument, urged on behalf of the appellee, that the proof did not correspond with the declaration, and that therefore the charge of the court in favor of the defendant was correct, is based upon the supposition, that the cause of action set forth in the declaration pertains to the plaintiff *individually*, while the proof conduces to show a right of recovery in him as administrator. The declaration avers, that the plaintiff was possessed of the slaves, " *as of his own property as such administrator as aforesaid, and being so possessed thereof,*" casually lost them ; that they came to the possession of the defendant, by finding ; and that the defendant, knowing them to be the property of the plaintiff " *as admin-*

*istrator* as aforesaid," did not deliver them to him ; and it makes profert of the letters of administration. This case is distinguishable from those in which mere words of description, such as administrator, governor, &c., succeed the name of the plaintiff in the declaration. Here, in those averments which constitute the gist of the action, the words "*as administrator*" are used, clearly indicating a cause of action in the plaintiff in his representative capacity. The declaration, in this particular, corresponds with the precedents in actions by administrators.—See 1 Saunders' Pl. and Ev. 499–500 ; 2 Chitty on Pleading, 841–842. We make the following quotations from 1 Saunders' Pl. and Ev. 498, as applicable in principle to the question, and decisive of it : " In every declaration by an executor or administrator as such, he should describe himself accordingly in the commencement, though, indeed, it will suffice if the facts appear in other parts of the declaration ; and in stating a debt or promise to him, the word ' as executor,' &c., must be used, or the omission will be fatal even after the verdict."—1 Chitty on Pleading, 20, notes *z* and *a* ; Worden v. Worthington, 2 Barbour's S. C. R. 368.

The charge of the court below, that if the jury believed the evidence, they must find for the defendant, is also defended upon the ground, that the plaintiff declares upon the prior possession of himself in his representative capacity, while the proof shows that he was never in actual possession, and that he had no right except that which results from the title of his intestate. " The property in the slaves sued for draws to it a possession in law ; therefore, an administrator may declare on his own possession as administrator, though in fact he has never had possession."—2 Chitty's Pleading, 840, note *y ;* 2 Saunders' Pl. and Ev. 873. It follows from this indisputable proposition of law, that the averment of the declaration is sustained by proof of title in the plaintiff as administrator, and the consequent right to the immediate possession of the property.—Shelden v. Hoy, 11 Howard's Practice Rep.

Having disposed of the minor points suggested on the briefs of counsel, we proceed to consider the question, whether the title to the property in litigation was in the plaintiff or the defendant.

Under the laws of this State, a sale by an administrator, of the personal property of the estate, without the authority of an order of court, or of a will, vests in the purchaser no title which is available against an administrator *de bonis non* who comes into office after him who made the sale.—Clay's Digest, 223, § 13; *ib.* 224, § 15; Lay's Ex'r v. Lawson's Adm'r, 23 Ala. 377; Fambro v. Gantt, 12 Ala. 304; Woolfork v. Sullivan, 23 Ala. 548; Wier v. Davis & Humphreys, 4 Ala. 444; Ventress v. Smith, 10 Peters, 175; Swink's Adm'r v. Snodgrass, 17 Ala. 653.

A sale, made under an order of court, which is void for want of jurisdiction in the tribunal making it, must, in a case like this, be regarded as if there had been no order. There was an order of sale in this case; and the sale under it must be valid or void, according as the order is valid or void.

The order of the orphans' court, set up as authority for the administrator's sale, through which the defendant claims title, is as follows: (Here the orders above set out are copied.) The statute, from which the invalidity of this order is argued, is in the following words: "It shall not be lawful for any executor, or executors, administrator, or administrators, guardian, or guardians, to take the estate, or any part thereof, of any testator or intestate, at the appraised value, or to dispose of the same at private sale, except when the same is directed by the will of the testator. *But in all cases where it may be necessary to sell the whole, or any part, of the personal estate of any testator or intestate, it shall be the duty of the executor, administrator, or guardian, to apply to the orphans' court of their county, for an order of sale, and upon obtaining the same, to advertise the time and place of such sale,*" &c.

This statute does not confer upon the orphans' court authority to order the personal property to be sold, without limitation or restriction. On the contrary, it is clearly provided, that the order of sale is to be made on the application of the administrator, and where the sale is necessary. This idea is corroborated by the fact, that there is another statute, which directs that, if the estate is not in debt, "so as to enforce a sale of any part of the estate," the judge shall, in a given time, take steps to effect a division. In the case of Lay's Ex'r v. Lawson, 23 Ala. 390, Judge Goldthwaite, re-

ferring to the statute copied above, says : "We entertain no doubt, that it was the object of the legislature, not only to prevent private sales of the property belonging to estates by administrators, *but any sale whatever, unless required* by the condition of the estate, or the nature of the property sold." In the case of Steele v. Knox, 10 Ala. 614, Judge Ormond, in reference to the same subject, uses the following language : " Our statutes regulating this subject are evidently framed upon the supposition, that there shall be no sale of the personal property of a deceased, unless there is a necessity for it, and do not give to the administrator the exclusive right to judge of the necessity, but require him to apply to the orphans' court for permission to sell, *and authorize the power* ' *when it may be necessary.*' "

The jurisdiction conferred by the statute under consideration is not authorized by, or deducible from, the act of 1806, (Clay's Digest, 300, § 21), which confers certain specific powers, and clothes the court with full jurisdiction of all testamentary and other matters pertaining to an orphans' court or court of probate. At common law, an administrator had full authority to sell the personal property of the estate, and his power in that respect was limited only by his discretion. The directing an administrator to sell, did not pertain to the jurisdiction of any tribunal. Looking, therefore, to the common law, and to the authority exercised by the ecclesiastical courts, in construing the words, " full jurisdiction of all testamentary and other matters pertaining to an orphans' court or court of probate," we can find in those words no authority for the jurisdiction to order sales by an administrator. Therefore, our decisions, in reference to the validity of orders made under the act of 1806, have no application here, and are not affected by this opinion.—Hilliard and Wife v. Binford's Heirs, 10 Ala. 977 ; Herbert v. Hanrick, 16 Ala. 591 ; Eslava v. Elliot, 5 Ala. 264 ; Miller v. Jones, 26 Ala. 247.

The power to order the sale of personal property is the creature of the statute, and the grant of the power, as we have already concluded, is accompanied by a specification of the circumstances under which it is to be exercised ; and those circumstances are, an application by the administrator, and the necessity of the sale. The order of sale in this case

does not indicate that an application was made by the administrator, nor that there was any necessity, growing out of the condition of the estate or the character of the property, for the sale. The order of sale, and every word in it, may be true, and at the same time it may also be that the administrator neither sought nor desired a sale of the property, and that the judge of the orphans' court ordered the sale of his own volition, in the absence of any necessity for it. It is unnecessary, therefore, to inquire whether the application of the administrator and the necessity must both be shown, or whether the jurisdiction is maintainable in the absence of either. The existence of neither of them is shown in the order contested in this case. The invalidity of such an order seems to result from an application of the undeniable doctrine, that the orphans' court was a court of limited jurisdiction, and that the facts upon which the statute makes its jurisdiction depend, must appear on the record.

But the very same question that we are considering, in reference to the same order, was before this court in the case of Wyatt's Adm'r v. Steele, 26 Ala. 639. The court say, in that case : " Whether a sale was necessary, was a question for the determination of the orphans' court ; a question upon which its jurisdiction depended. The rule is well settled, that when the jurisdiction of the court depends upon a fact, which such court is required to ascertain and settle by its decision, as a preliminary to its jurisdiction, then the exercise of its jurisdiction implies the previous ascertainment of the preliminary jurisdictional fact, and the decision of the court as to the jurisdictional fact cannot collaterally be called in question." To what extent that decision should be regarded as an authority in this case, can be best determined by comparing it with later and earlier decisions of this court, and testing it by principles recognized in our own and other courts.

In the case of Gunn v. Howell, 27 Ala. 676, it was held, that the judgment of the court of a sister State, in a statutory proceeding by garnishment, was void, because the record did not affirmatively show a return of *nulla bona* on the creditor's execution, which was regarded as a jurisdictional fact in the case. The judgment in that case was rendered by a court of general jurisdiction ; but because its proceedings in that

34

particular case were under a special authority conferred by statute, it was deemed, *quoad hoc*, an inferior court; and it was held, that all the facts necessary to sustain the jurisdiction of the court, must appear from its proceedings, and that nothing in proceedings of that character was to be taken by intendment.

In Hamner v. Mason, 24 Ala. 480, an order of the orphans' court, discharging the sureties of a guardian, was regarded as valid, because the taking of the new bond, which was a jurisdictional fact, was shown by the record. In that case, the law applicable there, as well as here, is thus laid down : " Where the fact upon which the power to act depends, is referred by the law maker to be determined by the court or officer, the determination of the fact by such court or officer is *res adjudicata*, and cannot be questioned. The question, whether a new bond was given, was referred to the court, and was determined by it. *This fact appears affirmatively from the record, and is not traversable.*"

Judge Dargan, in Wilson v. Judge of the County Court of Pike, 18 Ala. 160, in reference to a bastardy proceeding, says : " It is true the judgments of courts of limited jurisdiction must show the facts and circumstances which authorize the court to take cognizance of the matter ; *in other words, they must show the jurisdiction of the court ; otherwise, the judgment or sentence is a nullity.*"

It is decided in the case of Lamar v. The Commissioners' Court, 21 Ala. 776, that courts of limited jurisdiction *must show upon the face* of their proceedings sufficient to support their jurisdiction, or their judgments will be void ; and that a judgment revoking a ferry license was void, because the proceedings did not show that the owner of the franchise had had ten days notice of the requisition to give a new bond. The statute upon which that decision is based, makes the failure to give a new bond, after the notice prescribed, the ground, or reason, for revoking the license. So that, in this case, the jurisdictional fact was itself made by law the reason, or ground, upon which the court was to exercise the power conferred.

In the case of McCartney v. Calhoun, 11 Ala. 110, a question, strikingly similar to that under consideration, was de-

cided. The question in that case was as to the validity of
an administrator's sale of slaves, under an order of the court
of ordinary in Georgia. The order in that case, as in this,
was simply an authority, or direction to sell, without any
statement of the reasons for which it was made. The Geor-
gia statute prohibits the sale of slaves by an administrator,
but authorizes the court of ordinary to direct their sale,
where the other personal property, together with the hire of
slaves for twelve months, is insufficient to discharge the debts,
or where an equal division could not be made. The sale was
held void, because the jurisdictional facts were not shown in
the proceedings of the court. The court say, in reference to
the very question which we are now considering : " The
argument urged, that *we must presume those facts to have been
done without which the court of ordinary could not have directed
the sale of the slaves, is at war with the entire current of author-
ity, and would confound all the distinctions between courts of
general and those of limited jurisdiction.*"

We cite, also, as fully sustaining the principle of the fore-
going authorities, decisions of this court in the following
cases : Commissioners of Talladega v. Thompson, 15 Ala.
139 ; same case, 18 Ala. 696–697 (see, also, the quotations
from Bacon's Abridgment in this case) ; Heirs of Bishop v.
Hampton, 15 Ala. 761 ; Wyman v. Campbell, 6 Porter, 219 ;
Taliaferro v. Bassett, 3 Ala. 670 ; and Owen v. Jordan,
27 Ala. 608.

From the decisions of this court, collected and cited above,
it will be found that there is a long chain of cases, uniformly
maintaining, that the orphans' court was a court of limited,
or special jurisdiction ; that therefore, to the validity of its
judgments, it is necessary that its jurisdiction should be
shown, in each case, upon the face of its proceedings ; and
that the facts necessary to support the jurisdiction will not
be supplied by intendment. The cases are in irreconcilable
conflict with the doctrine of Wyatt v. Steele, *supra*, that the
exercise of jurisdiction implies the previous ascertainment of
the jurisdictional fact. That doctrine abrogates the distinc-
tion between courts of general, and of special, or limited
jurisdiction. In a quotation from 1 Strange, in the Commis-
sioners of Talladega v. Thompson, 18 Ala., that distinction is

lucidly stated, as follows : " Nothing shall be intended to be out of the jurisdiction of a superior court, but that which specially appears to be so ; and on the contrary, nothing shall be intended to be within the jurisdiction of an inferior, but that which is so expressly alleged." It is conceded, that if the court of limited jurisdiction is charged with the ascertainment of jurisdictional facts, and its proceedings show that these facts were ascertained, they cannot be denied ; because the making of the jurisdiction of the court depend upon a preliminary fact, implies authority to ascertain that fact. A misapprehension of this principle, doubtless, led the court, in Wyatt v. Steele, into the position, that the exercise of a jurisdiction dependent upon a preliminary fact implies the ascertainment by the court of that fact.

The case cited in support of the opinion in Wyatt v. Steele, does not sustain it. The case is Brittain v. Kinnard, 1 Brod. & Bing. 432, (5 E. C. L. 137). It really asserts nothing more, than that the ascertainment of jurisdictional facts, by a court of limited jurisdiction, is conclusive. " The general principle," says Dallas, C. J., in that case, " applicable to cases of this description, is perfectly clear. It is established by all the ancient, and recognized by all the modern authorities ; and the principle is, that a conviction by a magistrate, who has jurisdiction over the subject-matter, is, if no defects appear on the face of it, *conclusive of the facts stated*." And to the same effect are the decisions of the other judges. The proceedings of the court disclosed the jurisdictional facts ; and the question was, whether they could be contradicted.

The case of Wyatt v. Steele has already been departed from by our predecessors, in the cases of Owen v. Jordan, 27 Ala. 608, and Gunn v. Howell, *supra ;* and is, in effect, overruled as to the principle upon which it proceeds. The question now is, not whether we shall overrule it, but whether we shall repeat the principle decided. We deem it our duty to dissent in terms, as has heretofore been done in effect, from so much of the opinion in Wyatt v. Steele, *supra*, as is quoted above ; because we cannot adhere to it without overruling a large number of decisions of this court, some of them later than that case, which harmonize among themselves, are well recognized by the profession, and rest upon undeniable principles.

That the statute of limitations does not commence running against the plaintiff, until the appointment of an administrator *de bonis non*, is settled by the decision in Lay v. Lawson, 24 Ala. 184, and other authorities cited.

For the error in the charge of the court below, its judgment is reversed, and the cause remanded.

STONE, J., not sitting.

NOTE BY THE REPORTER.—The foregoing opinion was delivered at the June term, 1856, but was afterwards withdrawn on the petition of the appellee's counsel for a rehearing. The substance of the arguments submitted with the petition is incorporated in the preceding briefs. At the present term, in response to the application for a rehearing, the following opinion was pronounced:

WALKER, J.—The importance of the decision in this case ; the arguments against the opinion delivered at the last term, by the counsel for the appellee, and by other members of the bar, who maintained its incorrectness ; and a sincere desire upon our part to give to all the arguments a most deliberate and thorough examination, induced us to set aside the judgment of reversal, and to hold the case under advisement until the present term of the court. Our reflections, and examination of authorities, have confirmed us in the opinion expressed at the last term ; and, while acknowledging the learning and ingenuity of the arguments urged against it, we regard it as a duty to adhere to that opinion.

It has been argued, that the orphans' court ought to be considered a court of general jurisdiction. The argument is drawn from the 9th section of article V of the constitution, which confers upon the general assembly power to establish "a court of probate for the granting of letters testamentary and of administration, and for orphans' business ;" and the act of 1806, (Clay's Digest, 300, § 21,) which creates the orphans' court, and gives it "full jurisdiction of all testamentary and other matters pertaining to an orphans' court or court of probate." It is contended, that the orphans' court was made by this statute, enacted in pursuance to the

express provisions of the constitution, a court of general jurisdiction. Without contesting that proposition, let us inquire what is its effect. If the court is made one of general jurisdiction over all matters pertaining to an orphans' court, it acquires by the comprehensive grant of power the same jurisdiction which pertained to similar courts in England, whence we derive the fundamental principles of our jurisprudence. As to the powers which it derives under this general grant of authority, it may be a court of general jurisdiction. But as to those powers which that court derives under special statutes, and which would not, in the absence of the statute, pertain to it as a court of probate, it must, in common with all other courts, be deemed a court of limited jurisdiction. Whenever, by statute, a new power is conferred even upon the circuit court, which undoubtedly is a court of general jurisdiction, and the mode of proceeding is prescribed by statute, it becomes, *quoad hoc*, a court of special, or limited jurisdiction. If, then, the orphans' court derives its power to order the sale of the personalty of estates from a statute, it is, as to that matter, a court of special jurisdiction. Whether it does derive this power from a statute, may be determined by inquiring whether or not it would have such a power in the absence of the statute. No lawyer would for a moment deny that, in the absence of the statute, the orphans' court would have had no power whatever to make any order for the sale of the personalty, because the power of selling the personalty appertained at common law to the administrator, and was limited only by his discretion.

At one time in England, the ordinaries had power to sell and dispose of the estates of decedents, and for the manner in which they exercised that power were, in the language of Blackstone, "not accountable to any but to God and themselves." This discretionary power was exercised by the English prelates, not in a judicial capacity, but as individuals. They did not act as a court, but were clothed with the power of seizing upon the goods, and of appropriating them to various purposes, which changed from time to time, as the people emerged from superstition, until at last the appointment of the widow or next of kin as administrator was provided for by statute ; and thenceforward a discretionary power over

the sale of decedents' goods was exercised by the administrator.

It is thus seen, that the authority to order the sale of the personalty of an estate never pertained to any court in England. Our statute conferred upon the court a power which did not belong to it in its general character of an orphans' or probate court. The statute was, as to the court, an enabling law, bestowing a new power ; and as to the administrator, a disabling law, taking away from him the discretionary power to sell. Its object was, to make that which was before a matter of discretion with the administrator, a matter of judicial power, to be exercised under the circumstances indicated in the statute. As to this power, the orphans' court is a new jurisdiction, unknown to the common law ; and must, upon a principle too well established to be questioned, be deemed a court of limited jurisdiction.

By the supreme court of Georgia, in the case of Tucker v. Harris, 13 Ga. 1, a forcible description is given of the looseness, carelessness, and irregularity which characterize the proceedings and records of the court of ordinary of that State, to which our court is, in the nature of its powers, strikingly assimilated. From that consideration, the necessity and propriety of a modification of the common law, in its application to that court, and the adoption of a more liberal rule of intendment in favor of its jurisdiction, are deduced. The learned judge, evidently alive to the evil of requiring the records of such a court, constituted as it is, to show affirmatively the jurisdictional facts ; and clearly perceiving the amount of litigation, and the doubtfulness of title, likely to result from the visitation upon the judgments of such a court of the stern rules of the common law, expressed a hope that another legislature would not be permitted to intervene, without the passage of an act, declaring courts of ordinary to be courts of general jurisdiction. We concur with the learned judge as to the necessity of legislation upon this subject ; and we think, that an act, declaring that courts of probate shall be regarded as courts of general jurisdiction, *when their orders, judgments, or decrees, are collaterally assailed*, would meet and remedy the evil as to all subsequent proceedings of that court. But, while we acknowledge the expedi-

ency of a modification of the law in its application to the probate court, we do not consider it our province to make that modification. We, as individuals, know that the probate judges are not always selected for their legal learning ; and that the records of the court are often made up without the aid of counsel, and in haste ; and that consequently there must frequently occur a deficiency in the recital of jurisdictional facts, even where they really exist. Yet we must confine ourselves to the duty of declaring, and must not assume the privilege of making, or altering the law. The law, as we have laid it down, has existed, and been recognized, from the earliest days of English jurisprudence ; is maintained through an almost unbroken current of decisions by this court; and we must stand by it, or cease to act as judges, and convert ourselves into legislators.

We now, as we did at the last term, announce as our judgment, that the judgment of the court below must be reversed, and the cause remanded.