35 553
95 441

## HALL vs. CHAPMAN'S ADM'RS.

[DETINUE FOR SLAVE, BY ADMINISTRATOR DE BONIS NON, AGAINST PURCHASER FROM ADMINISTRATOR IN CHIEF.]

1. *Jurisdiction of probate court to order sale of decedent's personalty, and validity of order of sale.*—The jurisdiction of the probate court, to order a sale of the personal property belonging to a decedent's estate, is derived solely from statute, and is special and limited ; consequently, it has no jurisdiction to make an order of sale, on the petition of the administrator, which does not allege or show the existence of a legal cause for the sale, and such order of sale is a nullity.

2. *Outstanding title as defense.*—In detinue by an administrator, after the plaintiff has made out a *prima-facie* case, by proof of his intestate's possession at the time of his death, the defendant cannot defeat a recovery by showing an outstanding title in a third person, with which he has no connection.

3. *Demand and damages.*—In detinue by an administrator *de bonis non*, against a purchaser from the administrator in chief, under an order of sale from the probate court, which was void for want of jurisdiction, the plaintiff is entitled to recover damages from the commencement of the defendant's possession, without proof of a demand.

APPEAL from the Circuit Court of Dallas.

Tried before the Hon. NAT. COOK.

THIS action was brought by James L. Evans and Thomas G. Portis, as administrators *de bonis non* of Mrs.

36

Ellen Chapman, deceased, against James Hall, to recover a slave named Scott, together with damages for his detention ; and was commenced on the 19th December, 1856. No pleas appear in the record. The plaintiffs proved on the trial, as appears from the bill of exceptions, that their intestate died in said county of Dallas, the place of her residence, in 1853 ; that she was the owner of the slave here sued for at the time of her death, having purchased said slave from one Abner Jones, the administrator of Leroy W. Chapman, deceased ; that the defendant obtained the possession of said slave, on the 30th June, 1855, under a purchase from Benjamin Y. Beene, the administrator in chief of the plaintiffs' intestate, and had possession of said slave at the commencement of this suit ; also, the value of said slave, and of his annual hire from the commencement of the defendant's possession, and the grant of letters of administration *de bonis non* to themselves, by the probate court of said county, on the 15th December, 1856. The defendant then proved, that said Beene was appointed administrator in chief of said intestate, by the probate court of said county, in January, 1854, and died in August, 1856 ; that the slave Scott was sold by said Beene, as such administrator, pursuant to previous notice given by him, on the 30th June, 1855, under an order of the probate court of said county, and was purchased at the sale by the defendant, for $370 ; that he received a bill of sale from the said administrator, executed his note for the amount of the purchase-money, and afterwards paid said note to the administrator. He also read in evidence to the jury the orders of the probate court under which the sale was made, which were as follows :

(February 6, 1854.) "This day came Benjamin Y. Beene, administrator of the estate of Ellen Chapman, deceased, and applied for leave to sell the personal property belonging to said estate. It is therefore ordered by the court, that said administrator have leave to sell the personal property belonging to said estate, on a credit of six months, after giving thirty days notice as required by law, and that he make due return as required by law."

(February 9, 1854.) "This day came Benjamin Y.

Beene, administrator of the estate of Ellen Chapman, deceased, and applied for leave to sell the perishable property belonging to said estate. It is therefore ordered by the court, that said administrator have leave to sell the same, on the premises, on a credit of six months, after giving thirty days notice of the time and place of sale, and that he make due return to the court within thirty days thereafter."

(February 27, 1855.) "This day came Benjamin Y. Beene, administrator of the estate of Ellen Chapman, deceased, and filed his petition for a sale of the slaves belonging to said estate ; which petition is in the words and figures following, to-wit : ' To the Honorable Judge of Probate of Dallas county, Alabama : The undersigned, administrator of the estate of Ellen Chapman, deceased, represents to your Honor, that it is necessary, in order to pay the debts of said estate, that all the negroes (four in number) be sold ; and therefore he petitions, that an order be issued from your court, giving him authority to sell at such time as the law directs ; and your petitioner, as in duty bound, will ever pray,' &c. (Signed by said Beene.) "It is therefore ordered by the court, that Lorenzo Roberts be, and he is hereby, appointed guardian *ad litem* to defend for the minor heirs of said estate, and that publication be given, by advertisement in the *Dallas Gazette*, a newspaper printed and published in said county, for three successive weeks previously, notifying all persons interested to be and appear before the probate judge of said county, at his office in Cahaba, on the second Monday in April next, then and there to answer and defend against said petition, if they choose to do so."

The defendant then offered to read in evidence an order made by said probate court of Dallas, at its July term, 1852, in the matter of the estate of Leroy W. Chapman, deceased, in the following words: "It is ordered by the court, that Abner Jones, administrator of the estate of L. W. Chapman, deceased, have leave to sell the personal property belonging to said estate, upon giving thirty days notice of the time and place of sale, by advertisement at three or more public places in said county ; and

that *they* make due return of the account of said sales to the judge of probate's office of said county, within three months thereafter." This order, when offered in evidence by itself, the court excluded from the jury, and the defendant excepted. "The defendant then offered to prove, that said order was the only order ever made by said probate court, authorizing said Jones to sell the slaves or personal property of said L. W. Chapman, deceased; and that said L. W. Chapman died in said county, and owned said slave at the time of his death; and, in connection with this evidence, again offered to read said order in evidence, for the purpose of showing that said Ellen Chapman never owned said slave, and for any other purpose for which it could be used as evidence." The court excluded this evidence, and the defendant excepted.

"This being all the evidence, the court charged the jury, that if they believed the evidence, they should find for the plaintiffs; and that if they believed the evidence, the plaintiffs were entitled to recover for the detention of said slave, from the 30th June, 1855, to the time of the trial; to each of which charges the defendant excepted."

The rulings of the court on the evidence, and the charges to the jury, are now assigned as error.

BYRD & MORGAN, for appellant.—1. The orders of the probate court, under which the slave in controversy was sold by the administrator in chief, cannot be held invalid when collaterally assailed, since the record shows the jurisdictional fact, that they were granted on the application of the administrator; and where one jurisdictional fact affirmatively appears, and the action of the court is collaterally impeached, the existence of the other jurisdictional facts will be presumed. This principle, it is insisted, is recognized by numerous decisions of this court, and fully sustained by the adjudications of other courts.—Duval's Heirs v. P. & M. Bank, 10 Ala. 650; Wyman v. Campbell, 6 Porter, 219; Duval's Heirs v. McLoskey, 1 Ala. 708; Field's Heirs v. Goldsby, 28 Ala. 224; Thompson v. Tolmie, 2 Peters, 157; Grignon's Lessees v. Astor, 2 How. (U. S.) 319; 1 Conn. 469;

4 Ohio, 129; 12 How. (U. S.) 385; 10 Pick. 515; 6 Peters, 709; 10 Peters, 473. The case of Wyatt v. Rambo, 29 Ala. 528, simply decides, that the application by the administrator for the sale is a jurisdictional fact, and must affirmatively appear.

2. The defendant's possession under his purchase was *bona fide*, and not in any sense tortious; consequently, a demand was necessary to entitle the plaintiffs to damages.

E. W. PETTUS, *contra.*—1. The sale of the slave by Beene was void.—Wyatt's Adm'r v. Rambo, 29 Ala. 510, and authorities there cited; Ikelheimer v. Chapman's Adm'rs, 32 Ala. 676, in which the identical order of sale was involved.

2. The plaintiffs having shown the possession of their intestate, the defendant could not defeat a recovery by proving an outstanding title, unless he connected himself with it by showing that he acted under the authority of the real owner.—Joyce v. Dozier, 8 Porter, 303; Lowremore v. Berry, 19 Ala. 130; Duncan v. Spear, 11 Wendell, 54.

3. The defendant bought the slave as the property of Ellen Chapman, deceased, and received and held possession under that purchase; consequently, he is estopped from denying her title.—Garrett v. Lyle, 27 Ala. 586; Harbin v. Levi, 6 Ala. 399; Ogburn v. Ogburn, 3 Porter, 126; Gantt v. Cowan, 27 Ala. 582; Hardeman v. Cowan, 10 Sm. & Mar. 486; Gardner v. Boothe, 31 Ala. 186.

4. Beene could not deny the title of his intestate, nor can Hall, who claims under him; for one who claims title under a party who is estopped, is also bound by the estoppel.—Miller v. Jones, 26 Ala. 247; McCravey v. Remson, 19 Ala. 430; Colburn v. Broughton, 9 Ala. 351.

R. W. WALKER, J.—The jurisdiction of the probate court, to order a sale of the personal property belonging to a decedent's estate, is derived solely from statute, and is special and limited; consequently, that court has no jurisdiction to make such an order, except on an applica-

tion of the administrator, specifying the purpose and object of the sale.  Upon an application by the administrator, showing a necessity for the sale, for a purpose authorized by law, the jurisdiction of the court attaches; and an order of sale, founded on such application, cannot be pronounced void in a collateral proceeding, no matter how greatly the court may err in the exercise of its jurisdiction.  But an order of sale, which does not appear to have been founded on such an application, and which does not allege or show that any legal cause for the sale existed, is a nullity.—Wyatt v. Rambo, 29 Ala. 510; Ikelheimer v. Chapman, 32 Ala. 676; Hatcher v. Clifton, 33 Ala. 301; King v. Kent, 29 Ala. 542.

Were the question a new one, I might perhaps be inclined to hold that, in reference to the control it exercises over the sale of personal property of decedents, the probate court is a court of general, and not one of special and limited jurisdiction; and consequently, that such orders of sale as those set out in the record, bearing date the 6th and 9th February, 1854, could not be pronounced void, when presented collaterally.  But the question is not a new one.  So far from this being so, perhaps no single question has ever undergone a more thorough examination, or been the topic of abler or more protracted discussion in this court.  In Wyatt v. Rambo, (29 Ala. 510,) the whole subject was most elaborately considered; and the court announced, in substance, the principles already stated.  In that case, after the delivery of the first opinion, a rehearing was ordered, and the cause held under advisement until the succeeding term.  The deliberate examination, which, on the rehearing, the court as then constituted gave the question, only served to confirm the judges sitting in the case, in the views expressed in the first opinion; and that opinion was, at the succeeding term, adhered to.  The same question again came before the court in Ikelheimer v. Chapman, (32 Ala. 676,) and was again the subject of a discussion, which, it may be truly said, exhausted the merits of the controversy.  On that occasion, the majority of the court declared their decided approval of the principles settled in Wyatt v.

Rambo, (*supra*,) *and expressly decided, that the identical orders of sale now before the court were nullities.*   See, also, Hatcher v. Clifton, 33 Ala. 303.   A question thus thoroughly investigated, and solemnly and repeatedly adjudicated, I am unwilling to reconsider; and I therefore accept the law as my predecessors have declared it.   If the decisions referred to are not to be considered sufficient to settle the law of this case, I know nothing better calculated to destroy public confidence in the administration of justice.

2. The plaintiffs, having shown the prior possession of their intestate, had made out a *prima-facie* case; and the defendant was, therefore, not at liberty to defeat a recovery by showing merely an outstanding title in another, with which he had no connection.—Sims v. Boynton, 32 Ala. 361.   Consequently, there was no error in the exclusion of the evidence offered by the defendant.

3. The sale of the slave by Beene, being without authority, was a conversion; and the taking and retention of the property by the defendant was equally a conversion on his part.   The defendant's possession was, therefore, from the beginning, an unlawful possession.   Whenever a demand is necessary to change a lawful possession into a wrongful detention, as to terminate a bailment, no damages can be recovered, except from the service of the writ, unless a demand has been made.   But, where the possession is unlawful, a demand is unnecessary, and the plaintiff is entitled to recover damages for the wrongful detention; and "if a party, as in this case, is placed in a condition in which it is impossible to restore the thing to the owner, he is still responsible for all the consequences of a possession which commenced unlawfully."—Lawson v. Lay, 24 Ala. 188; Gardner v. Boothe, 31 Ala. 190. The proof showed that the defendant's possession commenced on the 30th June, 1855; and the jury were properly instructed to compute the damages for the detention from that time.

Judgment affirmed.